In the Matter of the Arbitration between FRITZ RIEMEN-SCHNEIDER, as Guardian of OSCAR RIEMENSCHNEIDER, Respondent, and MOTOR VEHICLE ACCIDENT INDEMNIFICATION CORPORATION, Appellant.

First Department, October 25, 1966.

*Sidney Gaines* of counsel (*Norbert Ruttenberg* and *W. Harvey Mayer* with him on the brief; *Friedlander, Gaines & Ruttenberg,* attorneys), for appellant.

*Allen Redlich* for respondent.

BOTEIN, P. J. Respondent was one of two passengers in an automobile owned and operated by one Valladares, when the car was struck in the rear by another automobile. Asserting that the latter vehicle was a "hit-and-run automobile" within the meaning of the New York automobile accident indemnification endorsement on Valladares' insurance policy, respondent filed a notice of claim with appellant Motor Vehicle Accident Indemnification Corporation (MVAIC) and thereafter demanded arbitration. MVAIC questioned that a hit-and-run automobile was involved in the accident and sought a stay of arbitration. After a trial before the court on a framed issue a judgment was entered which determined the issue in favor of respondent and denied a stay of arbitration. MVAIC appeals.

The injury for which the MVAIC endorsement provides compensation must arise out of the ownership, maintenance or use of an "uninsured automobile," a term which includes a "hit-and-run automobile" as defined in the endorsement. The definition of the latter term is set forth in the margin.* The issue between the parties concerns the meaning of the first proviso in the definition—"there cannot be ascertained the identity of either the operator or the owner of such 'hit-and-run automobile'". MVAIC contends, on the basis of the facts adduced at the trial, that respondent could at the time of the accident have identified the owner or operator of the offending car. Accordingly, it concludes that the requirement of the proviso has not been met. We agree with the factual contention but not with the conclusion.

---

* "Hit-and-Run Automobile. The term 'hit-and-run automobile' means an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident, provided: (1) there cannot be ascertained the identity of either the operator or the owner of such 'hit-and-run automobile'; (2) the insured or someone on his behalf shall have reported the accident within 24 hours or as soon as reasonably possible to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with MVAIC within 90 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and (3) at the request of MVAIC, the insured or his legal representative makes available for inspection the automobile which the insured was occupying at the time of the accident."

The accident happened while the Valladares car approached the Triborough Bridge. Valladares testified as follows:

" Q. Did something happen to your car as you approached the Triborough Bridge, the toll booths?  A. Yes.  While we were waiting, going in line, and I was moving up, I moved up.  The fellow in the back of me moved up a little too fast and hit my bumper.  As he hit my bumper, I got out.  I got out of the car and I looked, his bumper and my bumper, there was no damage. I turned to the fellows in the car and says, ' Everybody all right?'  They said, ' Yes.'  So I got in the car and went ahead.

* * *

" Q. Did the other fellow get out of his car also to look at his car?  A. No, he didn't.

" Q. Did you talk to him?  A. I spoke to him.  I even asked him, I says, ' What was the idea?'  He says, ' I put my brakes on too late and I just bumped the car.'  There was no damage to the car, so there was no sense taking any license."

The day after the occurrence respondent entered a hospital. Efforts then undertaken to identify the owner or operator of the other car failed.  Respondent testified that after the impact he was " groggy and drowsy  *  *  *  more or less in a fog, of shock."  The opinion of the trial court, however, does not mention the testimony, and we read and accept the opinion as finding that respondent's faculties were unimpaired from the time of impact to the time the Valladares car moved away; and that respondent did not discover until later that he had been injured by the impact.

The proviso in the definition that the owner or operator " cannot be ascertained " of course implies that if his identity can be discovered the condition of the proviso has not been fulfilled. There is nothing in the definition, however, which specifies the time as of which, or the circumstances in which, identity is to be deemed ascertainable.  Ascertainment implies inquiry, and, in the instant context, inquiry for a definite purpose, namely, that of identifying an individual supposed to be responsible for an injury.  If in the particular circumstances it is reasonable to believe, as here, that no injury had been suffered, inquiry is pointless until some subsequent manifestation of injury gives it point.  Not until then does the process of ascertainment serve a purpose.  As evidently found by the Trial Judge, respondent had no reason to believe that he had suffered any injuries at any time while the operator of the car which had caused the impact was ascertainable.  The definition should not be interpreted as contemplating inquiry in the absence of reason to

inquire, unless the language compels, and in our view it does not.

Whatever the connotations of precipitate flight because of guilt and fear the term "hit-and-run" may bear in colloquial usage, they have notably been permitted no expression in the insurance policy definition or in cognate MVAIC legislation (Insurance Law, § 167, subd. 2-a; §§ 617, 618). The emphasis is on inability to identify. The cause of the inability may most frequently be reprehensible flight, but that is not made a *sine qua non.* To make it one would in our opinion constrict gratuitously the remedial purpose underlying the MVAIC endorsement (cf. *MVAIC* v. *Eisenberg,* 18 N Y 2d 1; *Matter of Casanova* v. *MVAIC,* 36 Misc 2d 489).

The judgment should be affirmed, with costs and disbursements.

STEUER, J. (dissenting). Special Term denied respondent's motion to stay arbitration. There is virtual accord as to the facts. Petitioner was a passenger in an automobile driven by his friend Valladares. While the car was in line at a tollgate of the Triborough Bridge and barely moving, it was struck in the rear by another car. The contact was slight. Valladares got out and saw that there was no damage to his car. He inquired if any of his passengers were injured and, receiving negative replies from all, including petitioner, he got back in his car and both drivers proceeded on their respective ways. Later, petitioner discovered that he had in fact been injured.

Respondent's liability and its obligation to arbitrate arise out of one of two situations: where the accident was caused by an uninsured motorist, or by a hit-and-run driver. As to the first, there is no proof whatsoever that the offending vehicle was uninsured. The second classification is perforce relied upon.

It is not open to dispute that the facts do not show a situation which is commonly envisaged in a hit-and-run accident. The essential element which characterizes such an accident is that the offending driver leave the scene without giving the injured person an opportunity to ascertain his identity. The wording of the endorsement defines a hit-and-run automobile as one causing injury, provided "(1) there cannot be ascertained the identity of either the operator or the owner of such 'hit-and-run automobile'".

Of course the possibility of ascertaining identity must be a reasonable one. Here there was admittedly no impediment to the discovery of the driver's identity. What appears is a belief that such information would be unnecessary. The endorsement makes no provision for that situation and the language employed

forbids its inclusion. The repeated use of the words " hit-and-run " refers to a thoroughly understood concept that refers exclusively to the acts and state of mind of the offending driver and not at all to the intent or belief of the injured person.

If recourse is had to the intent of the public policy which resulted in mandating the inclusion of the coverage, no different result is warranted. Granted that the purpose is to provide compensation to injured victims who could not otherwise recover, but admittedly the relief accorded is only in the instances provided. The device employed, the MVAIC, derives its funds not from the State but from the premiums paid by motorists who comply with the law. These funds — in reality a tax to make up for the deficiencies of those who fail to comply — should be limited strictly to the instances which come within the extra coverage provided. No matter how liberal an interpretation may be indicated, one which finds no support in what has been provided and rests completely on a view of what might have been included is not permissible.

The order should be reversed and the stay granted.

RABIN and McNALLY, JJ., concur with BOTEIN, P. J.; STEUER, J., dissents in opinion in which STEVENS, J., concurs.

Judgment affirmed, with $50 costs and disbursements to the respondent.