Marie Walsh, Plaintiff-Appellee, v. State Farm Mutual Automobile Insurance Company, a Corporation, Defendant-Appellant.

**Gen. No. 51,981.**

First District, First Division.

January 15, 1968.

John T. Kennedy and Joseph Harrow, of Chicago, for appellant.

Morris, Liss, Arnold & Hennessy, of Chicago (V. J. Liss and Robert A. Hennessy, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

Plaintiff, Marie Walsh, brought an action for a declaratory judgment seeking a declaration by the court that she had a valid claim against the defendant, State Farm Mutual Insurance Company, under the latter's policy. In particular, she alleged in her complaint that she was entitled to coverage under the defendant's uninsured motorist provisions, and that the defendant had refused to honor her claim and submit it to arbitration as provided in the policy. The trial court entered judgment for the plaintiff from which this appeal is taken. No questions are raised on the pleadings.

The defendant contends on appeal that (1) the evidence adduced at trial failed to prove that the unknown car which struck plaintiff's automobile was a "hit-and-run automobile" within the meaning of the policy; and (2) the plaintiff is not entitled to recover on the policy because she failed to comply either with the notice provisions of the policy or with the requirement that she report the accident to the police within twenty-four hours.

At trial, the plaintiff testified that on May 2, 1964, she was returning home from a visit to her sister. At

about 9:30 p. m. she stopped for a red light at Higgins and Route 72 in Mt. Prospect. The highway was dark and surrounded by open country. Another car had stopped for the light and was positioned to the right of plaintiff's automobile. At this time another car collided with the rear of her car causing her car to move forward about a car length. She did not get out of her car, but turned around and observed that "a man was sort of slumped over the wheel, and he was grinning and making faces at me and was waving with one hand." Plaintiff looked in her rearview mirror but she was unable to observe the other car's make or license number. The driver of the other car did not get out after the impact. The light changed and the car to the right of the plaintiff turned the corner and went on.

The plaintiff testified that she then turned around again and the driver of the car that had hit her ". . . was just making faces and waving. And he had a very funny grin on his face. I was very frightened." Neither the plaintiff nor the party who had hit her got out of their cars. She drove on and thought the other car was following her deliberately. "He would come up behind me and drop back, and come up behind me and drop back. So all I could think of was to keep going, to keep him from forcing me off the road or hitting me." The plaintiff further testified that she intended to ask for help at a restaurant she knew of and stopped to make a left turn on Landmeier Road. The car that had hit her (and had been following her since the impact) approached plaintiff's car at a fast rate of speed. She thought he was going to hit her again, but he swerved around her car and proceeded onward. She did not see the vehicle again after it passed her, but was able to observe that it was a red Rambler Station Wagon. The plaintiff was unable to observe the Rambler's license plates. She was relieved when the car passed her, and she drove straight home.

159

When she arrived home the plaintiff testified that she told her husband what had happened. Neither she nor her husband called the police that night. The next morning her husband called the police "just to inquire." Plaintiff testified that she didn't immediately realize her neck was injured. Two weeks after the accident the plaintiff went to a doctor. On June 1, 1964, the plaintiff filed a statement with the State Farm Mutual Insurance Company.

Patrick Walsh, the plaintiff's husband, testified that on the morning following the accident he called the Elk Grove Police Department and informed them of the accident. He told the police that his wife was unable to get the other car's license number, and had been afraid to get out of her car. He asked the police whether or not he should come in to the station to make a "regular report" of the accident. He said that the officer informed him that there "wasn't much point in following up" the accident, "since the license wasn't taken." Walsh did not leave his name with the police.

 "The principles applicable to construction of insurance contracts or policies do not differ from those governing other contracts, and the established rules of construction apply in the interpretation of contracts of insurance." ILP, Insurance, § 141. The construction of an insurance contract, therefore, entails the consideration of the instrument as a whole; and the ascertainment from the written words of the contract of the intention of the contracting parties. Pierce v. Standard Acc. Ins. Co., 70 Ill App2d 224, 231, 216 NE2d 818. The terms used in the contract are to be understood according to their plain, ordinary, and popular sense. Canadian Radium & Uranium Corp. v. Indemnity Ins. Co., 411 Ill 325, 332, 104 NE 2d 250. "In determining what significance should be given to language where used in a contract, the situation of the parties, the nature of the subject-matter with which they

are dealing and the purpose sought to be accomplished are matters to be considered by the court." Clarke & Co. v. Fidelity & Casualty Co., 220 Ill App 576, p 580. (Citations omitted.)

The relevant portions of the insurance policy are as follows:

"Policy Conditions—Applicable To All Coverages . . .

"1. Notice of Accident, Occurrence or Loss. In the event of an accident, occurrence or loss, written notice shall be given by or on behalf of the insured to the company or any of its authorized agents *as soon as practicable. . . ."* (Emphasis added.)

". . . Uninsured Automobile Coverage . . .

"Damages for Bodily Injury Caused by Uninsured Automobiles. To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile. . . ."

"Definitions . . .

"Uninsured Automobile—means: . . . a hit-and-run automobile as defined; . . . ."

"Hit-and-Run Automobile—means an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident, provided: (1) *there cannot be ascertained the identity of either the operator or owner of such "hit-and-run automobile"; (2) the insured or someone on his behalf*

*shall have reported the accident within 24 hours to a police or judicial officer or to the Commissioner of Motor Vehicles,* and shall have filed with the company within 30 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and (3) at the company's request, the insured or his legal representative makes available for inspection the automobile which the insured was occupying at the time of the accident." (Emphasis added.)

■■ The insurer argues that the facts adduced at trial do not entitle the plaintiff to coverage under the policy's "Uninsured Motorist Coverage" because no showing was made that the identity of the automobile which struck plaintiff's car was unascertainable, and therefore, plaintiff was not struck by a "hit-and-run automobile" as defined by the policy. The meaning of the phrase "cannot be ascertained" which is contained in the policy was a question of law for the trial judge. Sindelar v. Liberty Mut. Ins. Co., 161 F2d 712 (7th Cir, 1947). Whether or not the facts offered in evidence by plaintiff came within the provisions of the policy as legally construed was a question of fact for the court sitting as trier of the facts. ILP, Insurance, § 571.

In Riemenschneider v. Motor Vehicle Acc. Indemnification Corp., 47 Misc2d 549, 262 NYS2d 950, affirmed in 26 App Div2d 309, 274 NYS2d 71, the court had before it a policy which defined a hit-and-run automobile as one where ". . . there cannot be ascertained the identity of either the operator or the owner of such 'hit-and-run automobile'. . . ." There the petitioner was a passenger in an auto which was hit in the rear by another vehicle. Both drivers got out of their cars. They observed no damage to either vehicle, and the petitioner stated that he had suf-

fered no physical injury. No identification was exchanged. Thereafter petitioner filed a claim for injuries under the uninsured motorist provisions of his policy claiming to have been struck by a hit-and-run automobile. The court held that even though the petitioner might have been negligent in failing to ascertain the identity of the offending vehicle he could still recover on the policy; the court did not limit the term "hit-and-run" to those situations in which the offending vehicle immediately flees the scene of the accident following impact. The court construed the phrase "cannot be ascertained" to include situations in which the behavior of the insured was in part responsible for the lack of identification of the offending vehicle.

██ The insurer, in the case at bar, contends that since the insured did not get out of her car to learn the identity of the offending driver it cannot be said that his identity was unascertainable. Where there is no ambiguity in the terms of an insurance contract the language alone is determinative of the intention of the parties. Allstate Ins. Co. v. Conglis, 33 Ill App2d 370, 179 NE2d 434. The plain words of the insurance contract in the instant case do not reveal an intent to limit an insured's coverage under the policy's uninsured motorist provision in the manner contended for by defendant. The policy does not define a "hit-and-run automobile" as one which immediately flees the scene of an accident, but rather defines such a vehicle as one whose owner or operator cannot be ascertained. The language of the policy does not reveal that the parties had agreed that the insured would attempt to obtain the identity of the driver of the offending vehicle at the risk of her own physical safety. See State of South Dakota v. Goff, 79 SD 138, 109 NW2d 256. The purpose of the policy is to provide coverage for an insured when struck by an automobile whose driver or owner cannot be ascertained; the reasons for such an inability to ascertain are not made part of the contract of

163

insurance. We will not add terms to the contract of insurance which the parties have not included in the language of the policy. Lentin v. Continental Assur. Co., 412 Ill 158, 105 NE2d 735.

██ ██ Plaintiff testified that she was afraid to get out of her automobile to learn the identity of the driver who had struck her. She testified that the driver of the offending vehicle was behaving in an erratic and provocative manner, and that the accident took place on a dark road in open country. The trial judge as trier of the facts might reasonably have concluded that the plaintiff was unable to ascertain the identity of the driver of the car that struck her because she was reasonably afraid for her own safety. We cannot say that such a finding by the trier of fact was against the manifest weight of the evidence, nor can we say that the insurance policy excluded such a situation from coverage under its uninsured motorist provisions.

██ The defendant next contends that the plaintiff did not comply with the notice provisions of the policy in that she did not notify the company of the accident "as soon as practicable," as provided in the policy. This phrase was construed by the court in London Guarantee & Accident Co. v. Shafer, 35 F Supp 647 (1940, DC Ohio) to mean that notice of the accident must be given to the insurer within a reasonable time; and whether notice was given within a reasonable time is dependent upon all of the facts and circumstances of the particular case. The purpose of such a notice requirement in an insurance policy is to provide the insurance company with an adequate opportunity to investigate the accident and prepare its defense. Weller v. Atlantic Cas. Ins. Co., 128 NJL 414, 26 A2d 503.

██ The record shows that the plaintiff, through her lawyer, did not notify the insurance company of her claim until June 1, 1964, about a month after the occurrence. However, the plaintiff testified that she did not consult

164

a doctor until two weeks after the accident. Also, it is worthy of note that since the offending vehicle was unidentified no third-party claimant was present against whom the insurance company would have to prepare a defense. The trial judge could reasonably have concluded from the evidence adduced that the plaintiff under all of the circumstances had acted in a reasonable manner in notifying the company of the accident when she did, and that she had informed the company of the accident "as soon as practicable."

 Finally, the defendant contends that plaintiff failed to report the accident to the police within twenty-four hours of its occurrence as required by the policy, and therefore, the defendant is entitled to disclaim liability on its policy. We find no merit in this contention. The plaintiff's husband testified that he called the Elk Grove Police Station within twenty-four hours after the accident and informed them of the accident. They informed him there was no need to come in and make a formal report of the accident. The failure of the police to record the report of plaintiff's husband cannot be considered a breach of the policy requirement; clearly, a report was given to the police within twenty-four hours, and the trial judge was correct in so finding. See Casanova v. Motor Vehicle Acc. Indemnification Corp., 36 Misc2d 489, 232 NYS2d 713.

For the foregoing reasons the judgment of the Circuit Court is affirmed.

Affirmed.

MURPHY and ADESKO, JJ., concur.