James Zarder, Glory Zarder and Zachary Zarder,
by Robert C. Menard, Guardian ad Litem,
Plaintiffs-Respondents,

v.

Humana Insurance Company,
Defendant,

Acuity, A Mutual Insurance Company,
Defendant-Appellant.†

Court of Appeals

*No. 2008AP919. Submitted on briefs December 11, 2008.
—Decided February 18, 2009.*

2009 WI App 34

(Also reported in 765 N.W.2d 839.)

† Petition to review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Lance S. Grady* and *Daniel K. Miller* of *Grady, Hayes & Neary, LLC* of Waukesha.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Luke M. Wagner* of *Wagner Law Firm, S.C.* of Menomonie and *Robert Menard* of *Derzon & Menard, S.C.* of Milwaukee.

Before Brown, C.J., Anderson, P.J., and·Snyder, J.

¶ 1. BROWN, C.J. What does *run* mean when an insurance policy covers "hit-and-run" accidents as part

of an uninsured motorist provision and the policy does not define the term? Does *run* mean to flee without stopping, or does it mean leaving the scene without providing identifying information even if the driver stopped to see if there was any injury? We hold that the latter definition controls and affirm the circuit court.

¶ 2. The facts relevant to this appeal are brief and undisputed. On December 9, 2005, twelve-year-old Zachary Zarder was riding his bicycle on the street. An unidentified motor vehicle cut the corner short, causing it to enter the wrong lane and strike Zarder. The vehicle stopped about one hundred feet away. Three males got out of the car and walked back towards Zarder. One asked Zarder if he was ok. Zarder said yes. So they walked back to their car and drove away. They never provided Zarder with identifying information or asked Zarder if he wanted it.

¶ 3. Witnesses also heard the accident and spoke to Zarder. They asked Zarder if he was hurt, and Zarder said he was ok. Zarder said he was just scared and wanted to remain where he was for a moment. So, the witnesses left. The witnesses did not attempt to identify the motor vehicle or the occupants.

¶ 4. A short while later, Zarder's family contacted the police. A police officer then questioned neighboring residents who had vehicles similar to the one involved in the accident, as so described by Zarder and the witnesses. The officer also contacted the nearest high school, thinking that the occupants might be students there. No information turned up, and the police did not thereafter continue the investigation of the accident as a "hit-and-run." This is most likely because, at that point, no one thought Zarder's injuries were serious.

¶ 5. Later, though, the Zarders realized that Zachary's injuries were serious. He suffered two frac-

tures for which he had two surgeries and a lengthy recovery. The medical bills were more than Zarder's health insurance would cover. The Zarder family then sought coverage under their Acuity policy's uninsured motorist coverage. The Zarders asserted that the accident was a "hit-and-run" accident with an unidentified motor vehicle.

¶ 6. Acuity denied coverage and sought a declaratory judgment on coverage. It argued that the following provisions of the insurance policy issued to Zarder precluded Zarder's claim:

> We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle. Bodily injury must be sustained by an insured person and must be caused by accident and result from the ownership, maintenance or use of the uninsured motor vehicle. (Emphasis omitted.)

The Acuity policy defined an "uninsured motor vehicle" as

> 2. . . . a land motor vehicle or trailer which is
>
> . . . .
>
> c. A hit-and-run vehicle whose operator or owner is unknown and which strikes . . . .

Acuity's position was that because the vehicle stopped and the operator inquired into Zarder's well-being, the accident was not a "hit-and-run."

¶ 7. The circuit court denied Acuity's claim based on public policy grounds. We granted leave to appeal because the issue is novel and because deciding it would further the administration of justice by definitively deciding the meaning of run in "hit-and-run."

579

¶ 8. The grant or denial of a declaratory judgment is addressed to the circuit court's discretion. *Jones v. Secura Ins. Co.*, 2002 WI 11, ¶ 19, 249 Wis. 2d 623, 638 N.W.2d 575. However, when the exercise of such discretion turns on a question of law, we review the question de novo. *Id.* Here, the issue turns upon the construction of an insurance contract, which is a question of law we review de novo. *See Folkman v. Quamme*, 2003 WI 116, ¶ 12, 264 Wis. 2d 617, 665 N.W.2d 857.

## WISCONSIN PRECEDENT

¶ 9. Acuity's main argument is that this issue has been previously decided. It cites *Hayne v. Progressive Northern Insurance Co.*, 115 Wis. 2d 68, 339 N.W.2d 588 (1983). There, the plaintiff sustained injuries when the car he was driving swerved to avoid an oncoming vehicle resulting in a loss of control and a roll-over. *Id.* at 69. The driver of the oncoming vehicle did not stop and was unidentified. *Id.* Important to that case, there was no physical contact between the plaintiff's vehicle and the other vehicle. *Id.* The supreme court stated the issue as follows:

> The sole issue on appeal is whether sec. 632.32(4)(a)2.b., Stats., requires uninsured motorist coverage for an accident involving an insured's vehicle and an unidentified motor vehicle when there was no physical contact between the two vehicles.

*Hayne*, 115 Wis. 2d at 69.

¶ 10. In deciding the question before it, the court cited recognized dictionaries to discover whether the term "hit-and-run" includes "miss-and-run" or whether it requires actual physical striking. *Id.* at 73–74. In all the dictionaries, the "hit" in "hit-and-run" was defined as

physical contact. *Id.* Therefore, the court reasoned that, since the legislature is deemed to use words and phrases according to their common and approved usage and since "hit" in "hit-and-run" was commonly defined to include an element of "physical contact," the plaintiff could not recover because there had been no physical contact. *Id.* at 74. In making this statement, the court concluded that "[t]hese definitions clearly indicate that the plain meaning of 'hit-and-run' consists of two elements: a 'hit' or striking, and a 'run,' or fleeing from the scene of an accident." *Id.* at 73–74. After having so stated, the court addressed and discarded the plaintiff's contention that "hit-and-run" simply meant an automobile that was "involved in an accident, after which the driver flees the accident scene." *Id.* at 74–75. It was in this context that the court again wrote:

> We find his argument unpersuasive. The dictionary definitions we previously cited uniformly indicate that "hit-and-run" includes two elements: a "hit" or striking, and a "run," or fleeing from the accident scene.

*Id.* at 75. Acuity seizes upon these two passages to support its claim that the issue is dead and buried and that "run" is synonymous with "fleeing."

¶ 11. But, not so fast. First of all, the issue in that case, as cogently stated by the supreme court, was whether there was "physical contact" such that there was a "hit." When an appellate court intentionally takes up, discusses and decides a question germane to a controversy, such a decision is not dicta but is a judicial act of the court which it will thereafter recognize as a binding decision. *State v. Sanders*, 2007 WI App 174, ¶ 25, 304 Wis. 2d 159, 737 N.W.2d 44. However, when the court's opinion expresses language that extends

beyond the facts in that case and is broader than necessary and not essential to the determination of the issues before it, that language is dicta and not controlling. *State v. Sartin*, 200 Wis. 2d 47, 60 & n.7, 546 N.W.2d 449 (1996). Thus, the definition of a term is dicta when a court defines a term "only because that term and its definition were part of the larger instruction that also addressed . . . the conduct at issue in the case." *State v. Harvey*, 2006 WI App 26, ¶ 19, 289 Wis. 2d 222, 710 N.W.2d 482.

¶ 12. The *Hayne* court did not intentionally take up and decide the "run" part of "hit-and-run." And the passages Acuity quoted were not germane to the outcome of *Hayne*. Moreover, the statements Acuity relied on were obviously off-the-cuff statements, made without any careful thought or analysis, another indication of dicta. For example, while the court seemingly equated "run" with "flee," it did not define or discuss the circumstances that determine when a "flee" has occurred.

¶ 13. This is borne out by the supreme court's statement that the "dictionary definitions [it had] previously cited uniformly indicate that 'hit-and-run' includes two elements: a 'hit' or striking, and a 'run,' or fleeing from the accident scene." *Hayne*, 115 Wis. 2d at 75. While in truth, the cited dictionary definitions *were* uniform on the "hit" part of "hit-and-run," these same authorities were anything but uniform on the "run" part of the phrase. *See id.* at 73. One definition said "run" meant "leaving the scene of the accident without stopping to render assistance or to comply with legal requirements," another said it was "illegally" continuing on one's way and another had it as "driv[ing] on after *striking*." *Id.*

¶ 14. We conclude that *Hayne*'s definition of "run" as a "fleeing from the scene of an accident" is dicta that begged the question. The facts in *Hayne* did not present

582

an issue as to whether the unidentified vehicle "ran" from the scene. Instead, the issue presented was whether the term "hit" in "hit-and-run" includes accidents without any physical contact. *Id.* at 69. We conclude that *Hayne* discussed "run" in passing only because that term was part of the phrase "hit-and-run." *See id.* at 73–74. Therefore, *Hayne*'s mention of "run" is uninformative dicta and not controlling.[1]

¶ 15. Without *Hayne* as the anchor, we are back to square one with regard to defining "run" in "hit-and-run." We will hereafter analyze the case the way the law says we must interpret insurance policy language. So, we will start with the Acuity policy language.

## THE ACUITY INSURANCE POLICY

¶ 16. Acuity's position, at bottom, is that its "hit-and-run" coverage requires a "run," or a fleeing from the

---

[1] In a concurring opinion to *Noffke v. Bakke*, 2009 WI 10, ¶ 60, 315 Wis. 2d 350, 760 N.W.2d 156, Chief Justice Abrahamson commented on the risk of relying on dictionary definitions which furnish more than one meaning and warned that "a court has to be careful not to select a friendly definition it likes from the many offered without explaining its choice." Otherwise, she wrote: "resort to a dictionary can be, as Justice Scalia has written of the use of legislative history, 'the equivalent of entering a crowded cocktail party and looking over the heads of the guests for one's friends.'" *Id.* We cannot believe that the *Hayne* court, learned as it was, would "definitively decide" (the dissent's words) the issue of what "run" means, knowing all the while that the dictionary definitions were all over the map regarding the meaning of "run" in the term "hit-and-run." Dissent, ¶ 44. At least, that court would not make such a decision without also explaining why it chose one meaning over another. This, as we pointed out, the *Hayne* court did not do. That is why the off-hand reference to "run" in *Hayne* was dicta. The *Hayne* court definitively decided nothing with regard to that word.

accident scene. In its opinion, the meaning of "run" in "hit-and-run" is to flee without stopping. Acuity contends that no run occurred here because the unidentified vehicle stopped and left only after young Zarder assured the three occupants that he was unhurt. Therefore, Acuity argues that it properly denied coverage because its insurance policy covers only "hit-and-run" accidents.

¶ 17. We construe insurance policies to give effect to the intent of the parties as expressed in the language of the policy. *Folkman*, 264 Wis. 2d 617, ¶ 12. As a general rule, similar to the way we read statutory language, we give the policy language its common, ordinary meaning, that is, what the reasonable person in the position of the insured would have understood the words to mean. *See id.*, ¶ 17. We enforce unambiguous policy language as written, without resort to the rules of construction or applicable principles of case law. *Id.*, ¶ 13. However, if the policy language is susceptible to more than one reasonable interpretation, it is ambiguous. *Id.* We will construe ambiguous language in favor of the insured, since insurers have the advantage over insureds because they draft the contracts. *Id.*, ¶¶ 13, 16.

¶ 18. Acuity did not define "hit-and-run" in its uninsured motorist policy. It simply states that coverage extends to accidents with "[a] hit-and-run vehicle whose operator or owner is unknown and which strikes [an insured]." Therefore, we must find and give effect to the common and ordinary meaning of "hit-and-run." *See id.*, ¶ 17. In construing an insurance policy, we may look to dictionary definitions to find the common meaning and usage of words. *Ennis v. Western Nat'l Mut. Ins. Co.*, 225 Wis. 2d 824, 831–32, 593 N.W.2d 890 (Ct. App. 1999). This is the same analysis the *Hayne* court conducted for

the "hit" portion of "hit-and-run" as it appears in WIS. STAT. § 632.32(4)(a)2.b (2005–06).[2] *See Hayne*, 115 Wis. 2d at 73–74.

¶ 19. Our review of recognized dictionaries reveals two different groups of definitions for the phrase "hit-and-run." One group of definitions includes only vehicles that continue driving away from the accident scene. The second group is broader and includes vehicles that stop but do not complete their legal requirements before leaving the accident scene. This is not surprising since the dictionary definitions in the *Hayne* decision presented the same dichotomy, as we earlier pointed out.

¶ 20. In the first group, THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 907 (2d ed. unabridged 1987) defines "hit-and-run" as "guilty of fleeing the scene of an accident . . . esp. a vehicular accident, thereby attempting to evade being identified and held responsible: *a hit-and-run driver.*" "The American Heritage Dictionary 625 (1979) defines 'hit-and-run' as 'designating or involving the driver of a motor vehicle who drives on after striking a pedestrian or another vehicle.'" *Hayne*, 115 Wis. 2d at 73 (emphasis omitted).

¶ 21. In the second group, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1074 (unabridged 1993), defines the driver of a "hit-and-run" vehicle as one who is "guilty of leaving the scene of an accident without stopping to render assistance or to comply with legal requirements." BLACK'S LAW DICTIONARY 730 (6th ed. 1990) defines a "hit and run accident" as a "[c]ollision generally between motor vehicle and pedestrian or with another vehicle in which the operator of the vehicle

---

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

leaves scene without identifying himself." And, "Funk and Wagnall's Standard College Dictionary 636 (1968) provides the following definition of 'hit-and-run': 'designating, characteristic of, or caused by the driver of a vehicle who illegally continues on his way after hitting a pedestrian or another vehicle.' " *Hayne*, 115 Wis. 2d at 73 (emphasis omitted).

¶ 22. We conclude that both groups of definitions are reasonable, so the policy language is ambiguous. "Run" has no one universal meaning in the context of a "hit-and-run." An ordinary insured could reasonably interpret the policy here such that "hit-and-run" limits coverage to accidents where (1) the operator flees or drives on without stopping or (2) the operator stops but drives on without providing identification or complying with his or her other legal duties.

¶ 23. Since either interpretation is reasonable, we must adopt the interpretation favorable to the insured. *See Folkman*, 264 Wis. 2d 617, ¶ 13. Therefore, the "run" of a "hit-and-run" occurs when the driver leaves the accident scene without providing identifying information, even though the driver stopped to see if there was injury. We thus affirm the circuit court and hold that the Acuity insurance policy covers Zarder's accident.

## THE OMNIBUS STATUTE, WIS. STAT. § 632.32(4)(a)2.b.

¶ 24. The Omnibus statute provides an alternative rationale for deciding this issue in favor of affirming the circuit court. Assuming, only for the sake of argument, that Zarder's accident falls outside of his Acuity coverage, WIS. STAT. § 632.32(4)(a)2.b. still com-

pels coverage. It is well-settled law that courts may compel and enforce coverage omitted from an insurance contract where the inclusion of such coverage is statutorily required. *Hayne*, 115 Wis. 2d at 72. Section 632.32(4) requires insurance companies to provide uninsured motorist coverage. *Theis v. Midwest Sec. Ins. Co.*, 2000 WI 15, ¶ 13, 232 Wis. 2d 749, 606 N.W. 2d 162. Thus, Acuity must provide insurance coverage for Zarder's accident if § 632.32(4) requires coverage for an accident involving a collision with an unidentified motor vehicle where the driver stopped and asked if the insured was injured, but left before providing identifying information.

¶ 25. WISCONSIN STAT. § 632.32(4) states in relevant part as follows:

> **(4)** REQUIRED UNINSURED MOTORIST AND MEDICAL PAYMENTS COVERAGES. Every policy of insurance subject to this section that insures with respect to any motor vehicle . . . in this state against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the . . . use of a motor vehicle shall contain . . . [the following provisions]:

> (a) *Uninsured motorist.* 1. For the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, in limits of at least $25,000 per person and $50,000 per accident.

> 2. In this paragraph "uninsured motor vehicle" also includes:

> . . . .

> b. An unidentified motor vehicle involved in a hit-and-run accident.

The legislature has defined neither the phrase "hit-and-run," *see Theis*, 232 Wis. 2d 749, ¶ 18, nor the word "run" used in § 632.32(4)(a)2.b.

¶ 26. In construing a statute, we must first look to the statutory language itself. *State v. Derenne*, 102 Wis. 2d 38, 45, 306 N.W.2d 12 (1981). When the statutory language is clear and unambiguous, we must rely on its ordinary and accepted meaning to find the legislature's intent. *Hayne*, 115 Wis. 2d at 74. As seen in *Hayne*, we also look to dictionary definitions to discover the common, ordinary meaning of statutory language. *See id.* at 73. Since the statute uses the same phrase as the insurance policy—"hit-and-run"—and since we earlier wrote how the term was ambiguous when interpreting Acuity's policy language, we likewise conclude that the meaning of "run" in "hit-and-run" is ambiguous as applied to the statutory language.

¶ 27. Trying to isolate the word "run" to resolve any ambiguity in the colloquialism "hit-and-run" would be fruitless. The Random House Dictionary of the English Language 1681–82 (1987) provides over 178 definitions for "run." Many are obviously irrelevant, but those that are relevant provide little clarity. For example, "run" means "to convey or transport, as in a vessel or vehicle," or "to leave, flee, or escape from: *He ran town before the robbery was discovered." Id.* at 1682.[3] While we resolve ambiguities in insurance policies in favor of the insured, there is no similar default

---

[3] "[T]o convey or transport . . ." is the sixty-fourth definition of run and "to leave, flee or escape . . ." is the sixty-second. The Random House Dictionary of the English Language 1682 (2d ed. unabridged 1987).

588

mechanism when construing statutes. So, to resolve the ambiguity, we must turn to another avenue.

¶ 28. And here, oddly enough, *Hayne* is helpful after all. Aside from dictionaries, our supreme court relied on three additional sources to decide the case: (1) the legislative history of WIS. STAT. § 632.32(4)(a)2.b., (2) the "hit-and-run" statute, WIS. STAT. § 346.67, and (3) the principle of construing statutes to avoid surplusage. *Hayne*, 115 Wis. 2d at 75–77 & 75 n.5. We thus turn to these same sources.

¶ 29. We begin with the legislative history of WIS. STAT. § 632.32(4)(a)2.b. The legislature adopted the following Legislative Council Note in ch. 102, Laws of 1979: "A precise definition of hit-and-run is not necessary for in the rare case where a question arises, the court can draw the line." This note evidences that the legislature recognized the vast variety of unpredictable scenarios that lead to claims for uninsured motorist coverage. *Theis*, 232 Wis. 2d 749, ¶ 18. Since that note leaves it to the courts to decide, we must look further.

¶ 30. The hit-and-run statute, WIS. STAT. § 346.67, provides the clearer guidance we seek as to what the legislature meant by the term "run" in "hit-and-run." The legislature is presumed to enact statutory provisions with full knowledge of existing laws. *Hayne*, 115 Wis. 2d at 84. When the legislature added the "hit-and-run" provision, subparagraph (4)(a)2.b., to the Omnibus statute, WIS. STAT. § 632.32, the rules of the road chapter had included a hit-and-run statute for over twenty years. *See* § 346.67 (1957); 1979 Wis. Act 102, § 171 (repealing WIS. STAT. § 632.32 and recreating it with subsection (4)(a)2.b.). Therefore, we presume that the legislature had full knowledge of the requirements in the "hit-and-run" statute when it repeated that phrase in § 632.32(4)(a)2.b.

¶ 31. The hit-and-run statute states, in pertinent part:

> The operator of any vehicle involved in an accident . . . shall immediately stop such vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until the operator has fulfilled the following requirements:
>
> (a) *The operator shall give his or her name, address and the registration number* of the vehicle he or she is driving to the person struck or to the operator or occupant of or person attending any vehicle collided with; and
>
> (b) *The operator shall, upon request and if available, exhibit his or her operator's license* to the person struck or to the operator or occupant of or person attending any vehicle collided with; and
>
> (c) *The operator shall render to any person injured in such accident reasonable assistance,* including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person.

Wis. Stat. § 346.67(1) (emphasis added).

¶ 32. The requirements in Wis. Stat. § 346.67 inform us that the definition of "hit-and-run" in Wis. Stat. § 632.32(4)(a)2.b. includes accidents, such as the one in this case, where the operator stopped to see if there was any injury, but left the scene without providing identifying information. Section 346.67 requires the operator to complete three legal requirements before he or she may leave the accident scene: (1) provide identifying information regardless of whether the insured

590

requests it, (2) provide his or her driver's license if requested, and (3) provide reasonable medical assistance. *Id.* Based on these requirements, an accident is a "hit-and-run" even when the operator stops and offers assistance to any injured person if the operator leaves the accident scene without providing the identification required in § 346.67(a).

¶ 33. This definition also complies with the principle that "statutes must be construed, if possible, so that no word or clause is rendered surplusage." *Hayne*, 115 Wis. 2d at 76. In *Hayne*, our supreme court identified that WIS. STAT. § 632.32(4)(a)2.b. has three parts, all of which should have individual meaning: (1) an unidentified motor vehicle, (2) a "hit" and (3) a "run." *See id.* at 73–74, 76. Defining "hit-and-run" to include vehicles that stop to offer assistance but leave without providing identification would not render any part surplusage.

¶ 34. This is best shown by example: Say all the facts in this case are the same except that the witnesses to the accident were able to get the license plate number of the vehicle that hit Zarder. And say that the police were able to track the vehicle down and identify the driver. And say that the driver had insurance. If those were the facts, we would have a "hit," or striking, and a "run," or departure from the scene without providing identification, but we would not have an "unidentified motor vehicle." The Omnibus statute would be irrelevant under such facts because this would not be an uninsured motorist case.

 

¶ 35. The Omnibus statute was designed to protect insureds against situations where an insured is injured and there is no tortfeasor insurance available to pay for the physical injuries. *See Theis*, 232 Wis. 2d 749,

¶¶ 28–29. The Omnibus statute works here. Including vehicles that stop but do not provide identification matches the purpose of Wis. Stat. § 632.32(4)(a). As our supreme court has concluded, there are two purposes of § 632.32(4)(a). *Theis*, 232 Wis. 2d 749, ¶¶ 28–29. One purpose is to "compensate an injured person who is a victim of an uninsured motorist's negligence to the same extent as if the uninsured motorist were insured." *Id.*, ¶ 28. A second purpose is to honor the insured's reasonable coverage expectations. *Id.*, ¶ 29.

¶ 36. We are mindful that the key to the legislative intent as to 'hit-and-run' may be found in considering the problems that the legislature anticipated in the uninsured motorist statute and the goals the legislature sought to achieve. *See id.*, ¶ 31 (considering the problems the legislature anticipated). We must consider not only the legislative purpose, but also any countervailing legislative policies or purposes that would dissuade us from adopting one interpretation of the statute over another. *See id.*

¶ 37. Our supreme court has pointed out that we must read the Omnibus statute so as to foster the countervailing legislative policy of limiting fraudulent claims. *See id.*, ¶ 30. So, in performance of this duty, we consider a treatise comment that, with regard to the "run" requirement, the fear may be that claimants will allege the motor vehicle or its operator could not be identified when, in fact, the insured could have ascertained the identity. *See* Allen I. Widiss & Jeffrey E. Thomas, Uninsured and Underinsured Motorist Coverage 691 & 691–95 n.3 (2005).

¶ 38. Different courts have guarded against this fear of fraudulent claims in three main ways. *See id.* at 690–97. On one end of the spectrum are courts that believe this fear is best resolved by a bright-line rule

that run should be restricted to fleeing. *See, e.g., Lhotka v. Illinois Farmers Ins. Co.*, 572 N.W.2d 772, 774 (Minn. Ct. App. 1998). In the middle are courts that place a duty on the insured to make all reasonable attempts to ascertain the identity of the unidentified motor vehicle or its driver. *See, e.g., Jones v. Unsatisfied Claim & Judgment Fund Bd.*, 273 A.2d 418, 421–22 (Md. 1971). Within this middle ground are courts that disregard this duty when there was a reasonable impediment to identification at the time of the accident. *See, e.g., id.* A reasonable impediment could be the claimant's disability (i.e., unconsciousness, an infant), misleading acts by the offending driver, fear, or confusion with police reports. *See, e.g., id.* at 422; *see also Walsh v. State Farm Mut. Auto. Ins. Co.*, 234 N.E.2d 394, 398–99 (Ill. App. Ct. 1968). While at the other end of the spectrum are courts which believe that the burden to produce identification is solely on the operator, not the insured, and if the operator does not do so, then the accident is due to a "hit-and-run" vehicle. *See, e.g., Binczewski v. Centennial Ins. Co.*, 511 A.2d 845, 847 (Pa. Super. Ct. 1986). Some of these courts reasoned that to impose a duty to ascertain the identity would be to read into the statute "language which does not there appear." *See, e.g., Mangus v. Doe*, 125 S.E.2d 166, 168 (Va. 1962).

¶ 39. Our review of case law, as supported by the Widiss and Thomas treatise, leads us to conclude that the vast majority of courts favor resolving any issue over the validity of a case based on findings of fact. *See* Widiss, *supra* ¶ 37, at 691 (most courts that place a duty on the insured have concluded based on the facts that the insured's failure to ascertain the identity did not preclude recovery). Some of these courts then rely on the fact finder to determine if the insured should have identified the vehicle or driver. *See, e.g., Scheckel*

593

*v. State Farm Mut. Auto. Ins. Co.*, 720 A.2d 396, 400 (N.J. Super. Ct. App. Div. 1998). At least one state does not focus in on any duty, but instead concludes that "[i]f fraudulent actions do arise they may be ferreted out in the same manner in which courts and juries handle such situations in other cases." *See Mangus*, 125 S.E.2d at 168.

¶ 40. We are convinced that reliance on the fact finder is proper because allegations of fraud require a careful examination of the underlying facts and an evaluation of the credibility of the parties and witnesses. *See Stevens v. Berger*, 255 Wis. 55, 57, 37 N.W.2d 841 (1949); *see also Teledyne Indus., Inc. v. Eon Corp.*, 373 F. Supp. 191, 195 (S.D.N.Y. 1974). We conclude that the proper way to combat fraudulent claims is to allow the fact finder to assess the genuineness of the insured's claim on a case-by-case basis when the opposing party alleges fraud. Then the claimant must carry his or her burden of proof and submit evidence to the fact finder that the driver left the scene without identifying himself or herself. Judging the credibility and the truthfulness of this allegation is then the fact finders job. This conclusion also accomplishes the fullest interpretation of the Omnibus statute's remedial purpose.

¶ 41. Therefore, as an alternative means of affirming the circuit court's decision denying judgment for Acuity, we hold that under Wis. Stat. § 632.32(4)(a), a "hit-and-run" occurs when the claimant can sustain the burden of proof to show that an unidentified motor vehicle left the accident scene without providing identifying information. We affirm the circuit court's order and remand with directions that the circuit court continue the proceedings on Zarder's uninsured motorist claim.

*By the Court*—Order affirmed and cause remanded with directions.

¶ 42. SNYDER, J. (*dissenting*). The majority concludes that the word "run" in Wis. Stat. § 632.32(4)(a)2. (omnibus clause), as used in the phrase "hit-and-run," is ambiguous when applied to an accident where a vehicle driver stops at the scene of an accident, is advised by the other party that no injury has occurred, and then leaves the scene of the accident without providing identification becoming an unknown operator or owner. Resolving the ambiguity in favor of the insured, the majority concludes that the Acuity policy provided coverage to the insured under the mandated omnibus clause uninsured motorist (UM) provision.[1]

¶ 43. Acuity contends that the phrase "hit-and-run," including both components "hit" and "run," has already been defined by our supreme court in *Hayne v. Progressive Northern Insurance Co.*, 115 Wis. 2d 68, 339 N.W.2d 588 (1983). The *Hayne* court concluded that "the plain meaning of 'hit and run' consists of two elements: a 'hit' or striking, and a 'run,' or fleeing from the scene of an accident." *Id.* at 73–74. It is undisputed that the operator of the unknown vehicle here did not "run" or "flee." The operator and vehicle stopped at the scene of the accident. Accordingly, argues Acuity, no ambiguity exists that would lend itself to a judicial analysis by this court to resolve the omnibus clause UM coverage issue in favor of the insured.

¶ 44. The majority seizes upon *Hayne*'s specific focus on the "hit" portion of the phrase "hit and run" to

---

[1] The circuit court decided the coverage issue in favor of the insured on a public policy basis. The majority opinion abandons that approach and affirms the existence of coverage based upon a statutory interpretation and construction analysis.

conclude that the "run" part of the definition is dictum. Majority, ¶ 14. Having done so, the majority then opines that the application of the ambiguous term "run" to UM omnibus clause coverage is "novel" and that this court should decide what "run" means in "hit-and-run" in order to further the administration of justice by definitively deciding the meaning of "run" in "hit-and-run." Majority, ¶ 7. Because I disagree that this court can declare the *Hayne* definition of "run" dictum, and because the definition is controlling to our analysis, I must dissent.

¶ 45. The supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case. *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997). Concerning the potential existence of dicta in supreme court opinions, however, the supreme court has directed that:

> While the statement in [an earlier supreme court opinion] was not decisive to the primary issue presented, it was plainly germane to that issue and is therefore not *dictum*.
>
> "It is deemed the doctrine of the cases is that when a court of last resort intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision."

*State v. Kruse*, 101 Wis. 2d 387, 392, 305 N.W.2d 85 (1981) (citing *Chase v. Am. Cartage Co.*, 176 Wis. 235, 238, 186 N.W. 598 (1922)); *see also Malone v. Fons*, 217 Wis. 2d 746, 753–54, 580 N.W.2d 697 (Ct. App. 1998) (analyzing prior supreme court statements as "dicta or holding").

¶ 46. Because the supreme court defined the term "run" as used in the omnibus clause phrase "hit and run," and because only the supreme court can withdraw language from or otherwise modify its own holding, *see Cook*, 208 Wis. 2d at 189, I respectfully dissent.