Darrin J. SCHAEFER, Plaintiff-Appellant,

v.

GENERAL CASUALTY COMPANY OF WISCONSIN, INC.,
Defendant-Respondent.

Court of Appeals

*No. 92-2138. Submitted on briefs January 25, 1993.—Decided
March 2, 1993.*

(Also reported in 498 N.W.2d 855.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Thomas M. Olejniczak, Donald L. Romundson* and *Tori Lynne Kluess* of *Liebmann, Conway, Olejniczak & Jerry, S.C.* of Green Bay.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John M. Swietlik, Jr.,* of *Cook & Franke, S.C.,* of Milwaukee.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Darrin Schaefer appeals a nonfinal declaratory judgment[1] holding that he is entitled to $25,000 under each of three uninsured motorist policies, or a total of $75,000. Schaefer claims he is entitled to $100,000 under each of the three policies, or a total of $300,000. We affirm the judgment of the trial court.

Schaefer, riding a motorcycle, collided with a truck driven by Randy Hill. The truck was pulling a trailer. Neither Schaefer nor his motorcycle came into contact with any portion of the trailer. At the time of the accident, Hill owned the truck and was within the scope of his employment for Paul Crum, who operated a painting business. The trailer was owned by Hill's father. Just before the accident, Crum and Hill had left a warehouse leased by Crum. The parties stipulate that Hill was negligent and Schaefer was not.

Neither Hill, Crum nor Hill's father had insured the truck or trailer.[2] Schaefer did have uninsured motorist

---

[1] Leave to appeal was granted September 11, 1992.

[2] Although it is not expressly stated that Hill's father had no insurance for the trailer, both parties stipulate that "Randy Hill did not have in place liability insurance for the trailer the truck he was operating was pulling at the time of the accident. No liability insurance existed for Randy Hill's acts or omissions while operating a vehicle pulling this trailer." Because no one

coverage under three policies obtained by his family. Each policy limited uninsured motorist coverage to $25,000 per person, $50,000 per accident. General Casualty agrees that Schaefer is entitled to the $25,000 per person limit on each policy and to stack the benefits available for a total coverage of $75,000. Schaefer, however, argues that in addition to stacking the policies, each policy's limit should be doubled because Hill was pulling a trailer, which is a second uninsured vehicle, and doubled again because both Hill and Crum qualify as an "owner or operator of an 'uninsured motor vehicle.' " Thus, Schaefer claims he is due $100,000 under each policy, or a total of $300,000.

The Schaefer policy provides:

> We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury:"
>
> 1. Sustained by an "insured;" and
>
> 2. Caused by an accident.
>
> . . ..
>
> . . . "Uninsured motor vehicle" means a land motor vehicle or trailer of any type [which lacks insurance].

The policy also limits the uninsured coverage under the heading "Limit of Liability" as follows:

> The limit of liability shown in the Declarations for "each person" for Uninsured Motorist Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. . ..

argues that Hill's father has insurance on the trailer, we assume that he did not.

This is the most we will pay regardless of the number of "insureds," claims made, vehicles or premiums shown in the Declarations, or vehicles involved in the auto accident.

■

The interpretation and application of an insurance policy to undisputed facts is a question of law that we decide without deference to the trial court. *Garcia v. Regent Ins. Co.*, 167 Wis. 2d 287, 293, 481 N.W.2d 660, 663 (Ct. App. 1992). Words or phrases in an insurance policy are ambiguous when they are susceptible to more than one reasonable construction; however, when terms of an insurance policy are plain on their face, the policy must not be rewritten by construction. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597, 598-99 (1990). An insurance contract is interpreted from the standpoint of what a reasonable person in the position of the insured would have understood the specific words to mean. *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156, 163 (1984). In construing and interpreting an insurance policy, the policy is considered as a whole to give each of its provisions the meaning the parties intended. *Kraemer Bros. v. United States Fire Ins. Co.*, 89 Wis. 2d 555, 562, 278 N.W.2d 857, 860 (1979).

Schaefer and General Casualty make a variety of arguments and counterarguments regarding whether the two "owners *or* operators" or two uninsured vehicles open the door to a double recovery. We conclude that both issues are resolved by looking to the plain language of the policies' "Limit of Liability" provision.

Schaefer contends that because the "Limit of Liability" language, insofar as it attempts to prevent the stacking of uninsured motorist policies is invalid because of sec. 631.43(1), Stats., *see Krause v. Massachusetts*

*Bay Ins. Co.*, 161 Wis. 2d 711, 717, 468 N.W.2d 755, 757-58 (Ct. App. 1991), the entire clause must be held invalid.

Section 631.43(1), Stats., states in part:

> When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provisions.

Wisconsin courts have held that the "Limit of Liability" clause at issue here is an "other insurance" provision referred to in sec. 631.43(1). *Krause v. Massachusetts Bay Ins. Co.*, 161 Wis. 2d 711, 717, 468 N.W.2d 755, 757-58 (Ct. App. 1991).

Citing *Streiff v. American Family Mut. Ins. Co.*, 118 Wis. 2d 602, 348 N.W.2d 505 (1984), Schaefer argues that the entire clause must be held invalid because the clause is indivisible. *Streiff* involved clauses in an insurance agency contract. One clause restricted solicitation within a territory, and the other purported to forfeit future extended earnings of a former agent who sold insurance in that territory. The court held these clauses constituted an indivisible covenant that violated a statute prohibiting unreasonable restraints of trade and, thus, were void and unenforceable even as to so much of the covenant as would be a reasonable restraint standing alone. *Id.* at 614-15, 348 N.W.2d at 512. Conversely, in this case, the "Limit of Liability" language at issue is divisible. It is void so far as it prevents stacking, or additional coverage promising to indemnify against the same loss. However, it is valid so far as it limits coverage

85

for other reasons. In fact, sec. 631.45(1), Stats., explicitly provides for such limitations. It states in part:

> An insurance policy indemnifying an insured against loss may by clear language limit the part of the loss to be borne by the insurer to a specified or determinable maximum amount . . . .. If the policy covers various risks, different limitations may be provided separately for each risk if the policy clearly so states.

The fact that the limit of liability language has previously been held as invalid for the purpose of preventing stacking does not mean that it has no effect. It is still valid for determining each policy's proper limit of liability.

Thus, it is proper to look to the "Limit of Liability" language of the uninsured motorist policies to determine whether the policy as a whole provides for a double recovery for either two "owners or operators, or two uninsured motor vehicles." *See Kraemer Bros.*, 89 Wis. 2d at 562, 278 N.W.2d at 860. Courts in other jurisdictions have done precisely that.

In *Government Employees Ins. Co. v. Oliver*, 192 Cal.App.3d 12, 237 Cal.Rptr. 174 (1987), the insured was involved in a three-car crash involving two uninsured vehicles. The insured sought multiple "uninsured motorist" recoveries. The court looked to language in the policy under the heading "Limit of Liability"[3] and held that the policy limited the insured's "uninsured motor-

---

[3] The "Limit of Liability" language stated:

The limit of liability for Uninsured Motorists Coverage stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of services, due to bodily injury sustained by one person as the result of one accident.

*Id.* at 15, 237 Cal.Rptr. at 175.

ist" recovery to the amount set forth in the policy declaration for injuries to one person, where only one accident occurred, even though the accident involved multiple uninsured motorists. *Id.* at 16, 237 Cal.Rptr at 176.

Likewise, the court in *Drewry v. State Farm Mut. Auto. Ins. Co.*, 129 S.E.2d 681 (Va. 1963), construed an uninsured motorist policy after three insureds were injured or killed in an accident and secured judgments against two uninsured motorists. The insureds conceded that although their collision was with two uninsured vehicles, there was only one accident involved. *Id.* at 683. The court looked to the "Limit of Liability" language[4] and found that the maximum coverage available was $30,000 in any one accident. *Id.* at 684.

In the instant case, the plain language of the policy states:

> The limit of liability shown in the Declarations for "each person" for Uninsured Motorist Coverage is our maximum limit of liability for all damages . . . sustained by any one person in any one auto accident. . ..

> This is the most we will pay regardless of the number of "insureds," claims made, vehicles or premiums

---

[4] This language stated:

The limit of bodily injury liability stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of such liability stated in the schedule as applicable to "each accident" is the total limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident.

*Id.* at 684.

shown in the Declarations, or vehicles involved in the auto accident.

Both parties admit that only one accident occurred here. Therefore, regardless of the number of uninsured motor vehicles or the number of owners or operators of such vehicles, the plain language of the policy unambiguously provides that each person injured in the accident shall receive a maximum of $25,000 under each policy. Therefore, we affirm the judgment of the trial court that Schaefer is entitled to $25,000 under each policy, or a total of $75,000.

*By the Court.*—Judgment affirmed.