Heather C. FISCHER, Wayne C. Fischer and Kathleen J. Fischer, Plaintiffs-Respondents,

v.

MIDWEST SECURITY INSURANCE COMPANY, Defendant-Appellant.

Court of Appeals

*No. 02–2343. Oral argument June 6, 2003.—
Decided November 20, 2003.*

2003 WI App 246

(Also reported in 673 N.W.2d 297.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Kara M. Burgos* of *Moen Sheehan Meyer, Ltd.*, La Crosse. There was oral argument by *James Naugler*.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *James G. Curtis* of *Hale, Skemp, Hanson, Skemp & Sleik*, La Crosse. There was argument by *James G. Curtis*.

Before Dykman, Vergeront and Lundsten, JJ.

¶ 1. DYKMAN, J. Midwest Security Insurance Company (Midwest) appeals from a declaratory judgment entitling Heather C. Fischer and her parents (the Fischers) to recover under the separate coverage limits of a Midwest policy with respect to uninsured motorist coverage (UM), underinsured motorist coverage (UIM), and medical payments coverage, up to the full extent of their actual damages. Midwest asserts that the insurance policy's limit on liability prohibits duplicate payments for the same elements of loss in a single accident. Midwest claims the trial court erred when it permitted the Fischers to recover under both UM and UIM coverage. We affirm.

## A. FACTS

¶ 2. The parties stipulated to the facts of this case. A car accident occurred in which Heather Fischer sustained injuries causing her to incur medical expenses in excess of $100,000. She also suffered personal injuries, pain, suffering and disability. Her total damages from the accident are at least $150,000. The

parties have not reached an agreement on damages beyond this amount. The Fischers are legally entitled to recover compensatory damages from both drivers.

¶ 3. At the time of the accident, Heather and her parents were covered by a Midwest Personal Automobile Policy. The coverage included UM bodily injury and UIM bodily injury. Heather was a passenger in a car whose driver was uninsured. The other tortfeasor had liability coverage with a maximum limit of $25,000 per person and $50,000 per accident.

¶ 4. The Fischers submitted a claim to Midwest for payment under both their UM and UIM coverage. Midwest paid the Fischers $125,000 under their UM coverage. Midwest also agreed, "to pay any difference between [the underinsured tortfeasor's] $25,000 liability coverage limit and the actual amount ultimately paid" to the Fischers by the underinsured tortfeasor. The Fischers then sought a declaratory judgment regarding the insurance coverage available under the Midwest policy. The trial court ruled that the insurance policy entitled the Fischers to both UM and UIM coverage. Midwest appeals.

## B. STANDARD OF REVIEW

¶ 5. In a declaratory judgment action, the granting or denying of relief is a matter within the discretion of the circuit court. *Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 635, 586 N.W.2d 863 (1998). We will uphold a trial courts discretionary decision as long as it was not erroneous. *Id.* at 635–36. An exercise of discretion is erroneous if it misapplies the law. *Id.* (citations omitted).

¶ 6. This case requires us to construe an insurance policy. When determining insurance coverage, we shall apply the same rules that are applied to contracts generally. *Kendziora v. Church Mut. Ins. Co.*, 2003 WI App 83, ¶ 6, 263 Wis. 2d 274, 661 N.W.2d 456. We enforce an insurance policy as written if it is unambiguous. *Folkman v. Quamme*, 2003 WI 116, ¶ 13, 264 Wis. 2d 617, 665 N.W.2d 857. Insurance contract language is ambiguous if it is susceptible to more than one reasonable construction. *Id.* We construe such ambiguities against the insurer. *Id.* We attempt to determine what a reasonable person in the position of the insured would have understood the words of the policy to mean. *Id.*, ¶ 20.

## C. ANALYSIS

¶ 7. This case presents an issue of first impression: may an insured recover compensatory damages under separate UM coverage and UIM coverage in a single accident? Wisconsin has well-developed law regarding UM and UIM coverage. Nevertheless, no authority has addressed the situation where an insured has claims from a single accident for both UM and UIM coverage because of the insurance status of multiple-tortfeasors. Although this a novel issue, we will follow the principles and methodology set forth by the Wisconsin Supreme Court in *Folkman*, 2003 WI 116.

¶ 8. The parties dispute a narrow issue: how to interpret the liability limitations in the UM and UIM endorsements. The drivers in the car accident qualify as uninsured and underinsured motorists; the parties stipulated that the Midwest policy covers compensatory damages resulting from the negligence of both drivers.

## 1. Policy Provisions

¶ 9. To understand the endorsements, we will examine how Midwest has organized the Fischers' policy. The policy begins with a Declarations page and seven separate sections follow. Only three of the sections are relevant to this case: Part A–Liability Coverage, Part B–Medical Payments Coverage, and Part C–Uninsured Motorists Coverage. The UM coverage in Part C has an endorsement. The heading on that document reads: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." In enlarged and bolded font, the phrase "UNINSURED MOTORIST COVERAGE–WISCONSIN" appears below the heading. The endorsement includes a "Limit of Liability" provision, which reads:

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

 1. "Insureds";

 2. Claims made;

 3. Vehicles or premiums shown in the Declarations; or

 4. Vehicles involved in the accident.

B. The limit of liability shall be reduced by all sums:

 1. Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A; and

 2. Paid or payable because of the "bodily injury" under any of the following or similar laws:

 a. Worker's compensation law; or

 b. Disability benefits law.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage provided by this policy.

 1. Part A or Part B of this policy; or

 2. Any Underinsured Motorists Coverage provided by this policy.

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

E. [Omitted]

¶ 10. A separate document with the same heading has, in enlarged and bolded font below it, the phrase "UNDERINSURED MOTORISTS COVERAGE-WISCONSIN." The pertinent portion of the UIM motorists coverage also has a "Limit of Liability" provision, which reads:

A. The limit of liability shown in the Schedule or in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

 1. "Insureds";

 2. Claims made;

 3. Vehicles or premiums shown in the Schedule or in the Declarations; or

 4. Vehicles involved in the accident.

B. The limit of liability shall be reduced by all sums:

 1. Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A; and

 2. Paid or payable because of the "bodily injury" under any of the following or similar law:

 a. Worker's compensation law; or
 b. Disability benefits law.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A, Part B, or Part C of this policy.

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

E. [Omitted]

¶ 11. Although the parties dispute how to interpret the liability limitations, neither party contends that subsec. D or subsec. E in the Limit of Liability provision is at issue in this lawsuit. This leaves Midwest with three theories to limit or eliminate recovery under UM and UIM coverage: (1) the limits of liability identified on the Declarations page; (2) the reduction clause; and (3) the prohibition against duplicate payments. We will discuss these provisions in turn.

## 2. Declarations Page

¶ 12. The Declarations page shows that the Fischers purchased, among other things, coverage for: (1) UM bodily injury that limits the insurer's liability to $150,000 for each person and $300,000 for each accident; (2) UIM bodily injury with the same liability limits; and (3) medical payments with a liability limit of $1,000. The Declarations page identifies these as separate types of coverage, for which the Fischers paid separate premiums. It also informs the insured that the policy forms and endorsements complete the policy.

¶ 13. The Fischers claim that the Declarations create a reasonable expectation that the limits for UM and UIM coverage are separate limits. They claim that Midwest has agreed to pay $150,000 on each coverage endorsement, if the insured qualifies for such coverage, because the declarations tie the maximum payment to the separate coverage provided through separate endorsements.

¶ 14. The Fischers also contend that the phrase "this coverage" in subsec. A of the liability provision ties the limit of liability to each separate coverage. Specifically, the Limit of Liability provision included in each endorsement only applies to the coverage that the endorsement changes. In other words, the Limit of Liability in the UM endorsement governs UM coverage. The same reasoning applies to the UIM endorsement. Therefore, the Fischers argue that "one accident" limits UM recovery to $150,000 for each person for a single accident. The limit applies likewise to the UIM endorsement.

¶ 15. Midwest asserts that the Declarations express the maximum limit of liability for all damages

resulting from one accident. It claims that the maximum recovery of compensatory damages for a single accident is $150,000 per person and $300,000 per accident as expressed on the Declarations page. In other words, the insured may only recover under a single type of coverage for compensatory damages for a single accident. Because the Fischers purchased only one policy, they may only collect, under either UM or UIM coverage, a maximum of $150,000 for each person in a single accident.

██

¶ 16. We agree with the Fischers' first argument. The Declarations identify, among other things, two separate types of coverage: UM and UIM coverage. The policy defines uninsured and underinsured motorists. These definitions are mutually exclusive. Midwest has offered no circumstance under which an uninsured motorist can also qualify as an underinsured motorist. Therefore, the policy anticipates and covers two different kinds of risks. We conclude subsec. A in each endorsement's Limit on Liability provision limits the insured's recovery in one accident to the maximum amounts identified on the Declarations. This limitation does not preclude recovery under more than one type of coverage; thus, subsec. A does not prevent the Fischers from recovering under both their UM and UIM coverage in a single accident.

¶ 17. To hold otherwise could lead to absurd results. For instance, an insured may recover the maximum amount of medical payments allowed, which is $1,000 under this policy. Following Midwest's reasoning, the insured would be unable to recover under any other liability or bodily injury coverage the insured purchased because he or she would have recovered the

maximum limit of a single type of coverage in a single accident. This result would violate a reasonable insured's expectations.

¶ 18. Even if we were to assume that Midwest's interpretation of subsec. A is reasonable, it is not the only reasonable interpretation. When a policy permits two reasonable interpretations, an ambiguity exists. *Danbeck v. Am. Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150. We construe ambiguities in insurance contracts against the drafters. Therefore, we conclude that subsec. A does not effectively eliminate UIM coverage when the insured recovers the maximum amount allowed under UM coverage.

### 3. Reduction Clause

¶ 19. Since Midwest has not argued that subsec. B of either endorsement precludes recovery under both UM and UIM coverage in a single accident, we need not address the merits of the Fischers' contention that Midwest's coverage denial constitutes an impermissible reduction under *Janssen v. State Farm Mut. Ins. Co.*, 2002 WI App 72, 251 Wis. 2d 660, 643 N.W.2d 857.

### 4. Duplicate Payment

¶ 20. Midwest claims that recovery under UIM would be a duplicate payment because the Fischers have already recovered the maximum limit of the UM coverage. To recover under both UM and UIM would be receiving payment twice, or a "duplicate payment" and subsec. C prohibits duplicate payments. Midwest also asserts that the Fischers are seeking duplicate payment

for the same elements of loss. It claims that just because some part of the loss remains underpaid does not mean it is still not the same element of loss. Underpayment, according to Midwest, does not justify a duplicate payment under subsec. C.

¶ 21. The Fischers contend that they seek payment for uncompensated damages. The parties stipulated that the Fischers' damages exceeded the limit of the UM coverage. Thus, the Fischers did not receive payments for some of their losses. The parties agree that the policy does not define "duplicate payment" or "same elements of loss." The Fischers contend that the plain meaning of "duplicate payment" is double or two-fold payment. Because the Fischers only seek recovery of uncompensated damages, they claim such payment could not be a duplicate payment.

¶ 22. Because the parties propose two contrary interpretations of a policy term, we must ascertain whether an ambiguity exists. Midwest measures "elements of loss" categorically; the Fischers define it by dollar amount. Even under Midwest's interpretation, however, no duplicate payment exists. UM and UIM describe two different types of loss caused by two different types of risks. Thus, Midwest's argument that the Fischers were underpaid does not advance its theory that UM and UIM have the same elements of loss.

¶ 23. We assume that Midwest's interpretation of "duplicate payment" is also reasonable. If Midwest's interpretation is reasonable, then subsec. C is ambiguous. We construe ambiguous terms against the drafter, Midwest. Likewise, if Midwest's interpretation is unreasonable, then we enforce the reasonable interpretation, proffered by the Fischers. Either way, we conclude that

531

subsec. C does not render payments under separate UM and UIM coverage duplicate payments for the same elements of loss.

¶ 24. The policy language in subsec. D supports our construction of subsec. C. Subsection D also uses the phrase "duplicate payment." We construe insurance policies as a whole and avoid rendering any provision meaningless. *See Gonzalez v. City of Franklin*, 137 Wis. 2d 109, 123, 403 N.W.2d 747 (1987). A plain reading of subsec. D leads one to expect that a "duplicate payment" would be one where both a tortfeasor and an insurer compensate the insured for the same element of loss. Subsection D guards against profiting beyond the damages actually incurred. At oral argument, counsel for Midwest could not explain why we should construe "duplicate payment" differently in subsec. C than in subsec. D.

¶ 25. Midwest argues that any construction other than its own cannot be within the reasonable expectations of the insured. Specifically, a reasonable policyholder would not expect a policy, providing both UM and UIM coverage, to allow recovery under both in the unusual circumstances where an accident involved both an uninsured and underinsured motorist. Midwest relies upon analogous case law from other jurisdictions to support its position. Because Wisconsin law adequately guides our construction of the parties' policy, we refrain from adopting the reasoning of other jurisdictions. Wisconsin derives the reasonable expectations of a person in the position of the insured from the ordinary meanings of the contract language. We conclude that the ordinary meaning of subsec. C does not prohibit compensation under UM and UIM coverage.

¶ 26. Finally, Midwest urges us to follow the reasoning in *Schaefer*, where the limitation of liability provision unambiguously prohibited double recovery. *Schaefer v. Gen. Cas. Co.*, 175 Wis. 2d 80, 87, 498 N.W.2d 855 (Ct. App. 1993). But the insured in *Schaefer* wished to stack multiple UM policies. *Id.* at 82–84. The Fischers do not seek to stack similar policies; rather, they seek compensation under both UM and UIM coverage. We find Midwest's argument that recovery under UM and UIM is a form of stacking unpersuasive.

## D. CONCLUSION

¶ 27. We will not address the Fischers' arguments relating to WIS. STAT. § 632.32 (2001–02) because our construction of the insurance policy results in our affirming the trial court. We conclude only that the language of the Fischers' policy permits the Fischers to recover under the separate limits of Midwest's UM and UIM coverage up to the full extent of their damages or both policy limits.

*By the Court.*—Judgment affirmed.