James Zarder, Glory Zarder and Zachary Zarder,
by Robert C. Menard, Guardian ad Litem,
Plaintiffs-Respondents,

v.

Humana Insurance Company,
Defendant,

Acuity, A Mutual Insurance Company,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2008AP919. Oral argument February 10, 2010.
—Decided May 14, 2010.*

2010 WI 35

(Also reported in 782 N.W.2d 682.)

326

327

For the defendant-appellant-petitioner there were briefs by *Lance S. Grady, Daniel K. Miller, and Grady, Hayes & Neary, LLC,* Waukesha, and oral argument by *Lance S. Grady.*

For the plaintiffs-respondents there was a brief by *Luke M. Wagner and the Wagner Law Firm, S.C.,* Menomonie, and *Robert Menard and Derzon & Menard, S.C.,* Milwaukee, and oral argument by *Luke M. Wagner.*

An amicus curiae brief was filed by *Timothy M. Barber and Axley Brynelson, LLP,* Madison, on behalf of the Wisconsin Association for Justice.

¶ 1. ANN WALSH BRADLEY, J. Acuity, A Mutual Insurance Company, seeks review of a published court of appeals decision affirming the circuit court's denial of Acuity's motion for declaratory judgment.[1] Acuity sought a declaration that the accident here was not a hit-and-run accident under the terms of the uninsured motorist (UM) policy issued to James and Glory Zarder. The circuit court and court of appeals determined that Acuity was not entitled to a declaratory judgment even though the occupants of the vehicle that allegedly struck thirteen-year-old Zachary Zarder stopped to check on his wellbeing before departing.

¶ 2.  Acuity asserts that both the circuit court and the court of appeals erred. It contends that, under the facts of this case, the vehicle involved in the accident was not a "hit-and-run" vehicle because the unidentified driver stopped to check on Zarder's wellbeing before leaving the scene of the accident. Further, Acuity argues that this court's discussion of the term "hit-and-run" in *Hayne v. Progressive Northern Insurance Co.*[2] controls the outcome of this case.

¶ 3.  We conclude that Acuity's focus on the unidentified driver's intention when leaving the accident

---

[1] *See Zarder v. Acuity, A Mut. Ins. Co.,* 2009 WI App 34, 316 Wis. 2d 573, 765 N.W.2d 839, affirming an order of the Circuit Court for Waukesha County, Kathryn W. Foster, Judge.

[2] 115 Wis. 2d 68, 73–74, 339 N.W.2d 588 (1983).

scene is not relevant to our determination of whether there is coverage under the terms of the insurance policy. Further, we conclude that *Hayne* does not control the outcome of this case. We, therefore, apply the standard rules of construction to the Zarders' UM policy.

¶ 4. Given that the phrase "hit-and-run" in the Zarders' UM policy is susceptible to more than one reasonable construction, we determine that it is ambiguous. We therefore construe the phrase "hit-and-run" in favor of coverage. Having concluded that there is coverage for this type of accident under the policy, we need not examine the requirements of Wis. Stat. § 632.32(4) (2007–08).[3] Accordingly, we affirm the court of appeals, but we modify the rationale and remand to the circuit court for further proceedings.

I

¶ 5. For the purposes of this interlocutory appeal, the facts are undisputed. Thirteen-year-old Zachary Zarder was riding his bicycle on a New Berlin municipal street on a snowy evening in December 2005 when his bicycle was struck by an unidentified motorist. The car stopped approximately 100 feet from Zarder. Three occupants got out of the car and approached Zarder, who remained at the accident scene.

¶ 6. Sandra and Edward Miller were walking in the neighborhood when the accident occurred. Sandra Miller said that she heard a young male voice say, "A car is coming." Sandra saw a car and heard a crash of metal.

¶ 7. Within seconds, the Millers arrived at the accident scene. They saw Zarder sitting in the snowbank beside his bicycle. They saw three young men exit a car,

_____

[3] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

approach Zarder, and ask if he was okay. Sandra over-
heard Zarder assure the occupants that he was okay.[4]
The occupants then returned to their car and drove
away. Sandra later signed an affidavit stating: "It did
not appear that the subject car was fleeing the accident
scene."

¶ 8. The Millers also asked Zarder if he was
injured, and he said that he was not. Later, however, it
became apparent that he was in fact injured. The
Zarders contacted the New Berlin Police Department
and reported the accident the same evening.

¶ 9. Officer Jeffrey Kuehl investigated the acci-
dent. He located car parts in the roadway of the accident
scene and interviewed witnesses, but he was unable to
identify the vehicle or its driver. Kuehl later stated in an
affidavit: "[T]he December 9, 2005 accident was not
investigated as a hit-and-run accident because the uni-
dentified vehicle stopped at the scene and inquired as to
Zachary Zarder's health and well-being[.]"

¶ 10. As a result of the accident, Zarder's leg and
arm were fractured, requiring two surgeries. His health
insurance policy, issued by Humana, was insufficient to
cover his medical bills. The Zarders therefore sought
coverage under their automobile insurance policy.

¶ 11. As required by Wis. Stat. § 632.32(4), the
Zarders' policy included uninsured motorist (UM) cov-
erage. The policy provided:

---

[4] According to a New Berlin police report, Zarder "advised
that after [the occupants] had checked on his wellbeing, he had
assured them that he was all right and they were released from
the scene. Zachary advises that he did not feel that the vehicle
was driving recklessly or speeding at the time of the accident,
however, he did advise that the vehicle appeared to have taken
the corner too short thereby crossing into his lane and striking
him."

> We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle. Bodily injury must be sustained by an insured person and must be caused by accident and result from the ownership, maintenance or use of the uninsured motor vehicle.

The policy defined "uninsured motor vehicle" in part as "a land motor vehicle or trailer which is . . . [a] hit-and-run vehicle whose operator or owner is unknown and which strikes [an insured]."

¶ 12. After Acuity rejected the Zarders' claim, they filed suit, claiming UM coverage.[5] Acuity answered, denying coverage. It asserted "that under the circumstances of this case the policy in question [does not] provide[] uninsured motorist insurance coverage benefits since the vehicle that allegedly struck the Plaintiff, Zachary Zarder, did not constitute a 'hit and run' vehicle under the law[.]" It also asserted contributory negligence as an affirmative defense.

¶ 13. Acuity filed a motion for declaratory judgment in circuit court, seeking a no coverage declaration in connection with the Zarders' claims. It did not specifically interpret the terms of the UM policy. Rather, it argued that the policy "does not expressly define what qualifies as a 'hit-and-run' vehicle. Consequently, Wisconsin courts' [statutory] construction of the phrase 'hit-and-run' in an insurance coverage context is instructive, given the absence of a definition of the same in either the policy or [Wis. Stat. § 632.32,] the omnibus statute."

---

[5] Zarder's medical insurer, Humana Insurance Company, was also listed as a defendant because it may have subrogation rights against Acuity.

¶ 14. Acuity cited *Hayne v. Progressive Northern Insurance Co.*, a decision by this court, which held that the statutory term "hit-and-run" unambiguously requires physical striking. 115 Wis. 2d 68, 339 N.W.2d 588 (1983). *Hayne* concluded: "[T]he plain meaning of 'hit-and-run' consists of two elements: a 'hit' or striking, and a 'run,' or fleeing from the scene of an accident." *Id.* at 73–74. Acuity argued that under *Hayne,* the unidentified vehicle was not a 'hit-and-run' vehicle because the driver stopped to check on Zarder rather than "fleeing from the scene of [the] accident."

¶ 15. After briefs and oral arguments, the circuit court denied Acuity's motion for declaratory judgment. Although the court did not specifically interpret the terms of the policy, it determined that Zarder was "hit" within the meaning of the term "hit-and-run."[6] It concluded: "I am very satisfied there isn't a hint of fraud here." The court explained: "Unlike many of the cases this court has reviewed, there is no phantom car or phantom driver. There is no issue of contact." Further, "there's no real claim of fraud because this young man has very . . . objective injuries."

¶ 16. Although the court concluded that the unidentified vehicle was not a "hit-and-run" vehicle within the meaning of *Hayne,* it determined that there was coverage under Acuity's policy. The court explained its reasoning in terms of "public policy" and the purpose underlying the omnibus statute, which mandates a minimum level of UM coverage in all liability policies.

¶ 17. The court of appeals accepted Acuity's interlocutory appeal. It determined that *Hayne's* definition of "run" was dictum because the Wisconsin supreme

---

[6] The court commented that the Millers heard the impact and that the hit resulted in property damage to the bike.

court in *Hayne* "did not intentionally take up and decide the 'run' part of 'hit-and-run' "; the definition of run was not "germane to the outcome of *Hayne*"; and it was an "off-the-cuff statement[], made without any careful thought or analysis[.]" *Zarder v. Acuity, A Mut. Ins. Co.*, 2009 WI App 34, ¶ 12, 316 Wis. 2d 573, 765 N.W.2d 839. The court continued: "Without *Hayne* as the anchor, we are back to square one with regard to defining 'run' in 'hit-and-run.' We will hereafter analyze the case the way the law says we must interpret insurance policy language." *Id.*, ¶ 15.

¶ 18.   The court discussed two reasonable definitions of "run" in the context of a hit-and-run vehicle: "the operator flees or drives on without stopping," or "the operator stops but drives on without providing identification or complying with his or her other legal duties." *Id.*, ¶ 22. The court adopted the interpretation favorable to the insured and concluded that a hit-and-run occurs when a driver leaves the scene of the accident without providing identifying information, even though the driver stopped to see if there was injury. *Id.*, ¶ 23.

¶ 19.   As an alternative rationale for affirming the circuit court, the court of appeals concluded that Wis. Stat. § 632.32(4)(a)2.b. compels coverage. *Id.*, ¶ 24. It consulted the legislative history of the statute and found little guidance. *Id.*, ¶ 29. However, it found the criminal hit-and-run statute, Wis. Stat. § 346.67, to be helpful.[7] *Id.*, ¶ 30. That statute provides that drivers

---

[7] Wis. Stat. § 346.67, titled "Duty upon striking person or attended or occupied vehicle," provides:

(1) The operator of any vehicle involved in an accident resulting in injury to or death of any person or in damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of the accident or as close thereto as possible

involved in some accidents must, among other obliga-
tions, provide their name, address, and vehicle registra-
tion number before leaving the scene of the accident.
Wis. Stat. § 346.67. The court "presume[d] that the
legislature had full knowledge of the requirements in
the 'hit-and-run' statute when it repeated that phrase in
§ 632.32(4)(a)2.b." *Zarder,* 316 Wis. 2d 573, ¶ 30.

¶ 20.   The court of appeals also determined that
defining "run" as leaving an accident scene without
providing identifying information comported with the
legislative purpose of protecting insureds against situ-
ations where there is no tortfeasor insurance available
to pay for their injuries. *Id.,* ¶ 35. Accordingly, it
affirmed the circuit court's denial of Acuity's motion for
declaratory judgment.

II

■

¶ 21.   The granting or denying of declaratory judg-
ment is a matter within the discretion of the circuit
court. *Theis v. Midwest Security Ins. Co.,* 2000 WI 15,
¶ 8, 232 Wis. 2d 749, 606 N.W.2d 162. An appellate
court will reverse the decision of the circuit court if it
erroneously exercised its discretion. *Id.* The circuit

but shall then forthwith return to and in every event shall remain
at the scene of the accident until the operator has fulfilled the
following requirements:

(a) The operator shall give his or her name, address and the
registration number of the vehicle he or she is driving to the
person struck or to the operator or occupant of or person attending
any vehicle collided with; and

(b) The operator shall, upon request and if available, exhibit his or
her operators license . . . ; and

(c) The operator shall render to any person injured in such
accident reasonable assistance . . . .

court has erroneously exercised its discretion if it bases its decision on an error of law or an error of fact. *State v. Ford,* 2007 WI 138, ¶ 28, 306 Wis. 2d 1, 742 N.W.2d 61.

¶ 22.  In this case, we are required to interpret the terms of an insurance policy to determine whether it covers the type of accident presented here. Interpretation of a policy presents a question of law, which we review independently of the determinations rendered by the circuit court and the court of appeals. *Liebovich v. Minn. Ins. Co.,* 2008 WI 75, ¶ 17, 310 Wis. 2d 751, 751 N.W.2d 764.

III

¶ 23.  We begin our discussion by setting forth the guiding principles for interpreting a provision in an insurance policy. Next, we address two arguments advanced by Acuity. The first focuses on the intent of the unidentified driver here, and the second is based on our prior decision in *Hayne,* 115 Wis. 2d 68. Finally, we apply the standard principles of construction to the Zarders' UM policy.

¶ 24.  Wisconsin Stat. § 632.32 is Wisconsin's omnibus motor vehicle coverage statute. It provides that every motor vehicle insurance policy issued in Wisconsin must contain certain mandatory provisions.[8] *Progressive N. Ins. Co. v. Romanshek,* 2005 WI 67, ¶ 10, 281 Wis. 2d 300, 697 N.W.2d 417. One of these require-

---

[8] Wis. Stat. § 632.32 is entitled "Provisions of motor vehicle insurance policies." Section 632.32(1) sets forth: "Except as otherwise provided, this section applies to every policy of insurance issued or delivered in this state against the insured's

ments is set forth in Wis. Stat. § 632.32(4), which mandates uninsured motorist (UM) coverage. It includes "unidentified motor vehicle[s] involved in [] hit-and-run accident[s]" within the definition of "uninsured motor vehicle."[9] Wis. Stat. § 632.32(4)(a)2.b.

¶ 25. When determining whether an insured may recover under the terms of his uninsured motorist policy, a court generally begins by examining the language of the policy, which is a contract for insurance.[10] If the court examines the policy and concludes that it provides coverage, there may be no need to construe Wis. Stat. § 632.32(4)(a)2.b. to determine whether coverage is mandated by law.[11]

liability for loss or damage resulting from accident caused by any motor vehicle, whether the loss or damage is to property or to a person."

"[A]n insurance policy may expand but not reduce the coverage required by the uninsured motorist statute." *Fletcher v. Aetna Cas. & Sur. Co.*, 165 Wis. 2d 350, 357, 477 N.W.2d 90 (Ct. App. 1991). Coverage omitted from an insurance policy will nevertheless be "compelled and enforced" as a part of the policy when the inclusion of such coverage is mandated by statute. *Progressive N. Ins. Co. v. Romanshek*, 2005 WI 67, ¶ 13, 281 Wis. 2d 300, 697 N.W.2d 417.

[9] Wis. Stat. § 632.32 was amended by 2009 Wis. Act 28. That act expanded the statutory requirements. The amendments do not affect this case because they apply to policies issued after November 1, 2009.

[10] *See, e.g., Folkman v. Quamme*, 2003 WI 116, 264 Wis. 2d 617, 665 N.W.2d 857; *Mau v. N.D. Ins. Reserve Fund*, 2001 WI 134, 248 Wis. 2d 1031, 637 N.W.2d 45; *Fischer v. Midwest Sec. Ins. Co.*, 2003 WI App 246, 268 Wis. 2d 519, 673 N.W.2d 297; *Meyer v. City of Amery*, 185 Wis. 2d 537, 518 N.W.2d 296 (Ct. App. 1994).

[11] *See, e.g., Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, ¶ 20 n.7, 586 N.W.2d 863 (1998) ("We recognize

¶ 26. The court's goal in construing an insurance policy is to determine and carry out the intentions of the parties. *Mau v. N.D. Ins. Reserve Fund*, 2001 WI 134, ¶ 13, 248 Wis. 2d 1031, 637 N.W.2d 45. We interpret undefined words and phrases in an insurance policy as they would be understood by a reasonable insured, giving words and phrases their common and ordinary meaning. *Acuity v. Bagadia*, 2008 WI 62, ¶ 13, 310 Wis. 2d 197, 750 N.W.2d 817; *Folkman v. Quamme*, 2003 WI 116, ¶ 17, 264 Wis. 2d 617, 665 N.W.2d 857. If words or phrases in a policy are susceptible to more than one reasonable construction, they are ambiguous. *Lisowski v. Hastings Mut. Ins. Co.*, 2009 WI 11, ¶ 9, 315 Wis. 2d 388, 759 N.W.2d 754.

¶ 27. If an insurance policy is ambiguous as to coverage, we will construe the policy in favor of the insured. *Froedtert Mem'l Lutheran Hosp. v. Nat'l States Ins.*, 2009 WI 33, ¶ 41, 317 Wis. 2d 54, 765 N.W.2d 251. "[B]ecause the insurer is in a position to write its insurance contracts with the exact language it chooses—so long as the language conforms to statutory and administrative law—ambiguity in that language is construed in favor of an insured seeking coverage." *Id.*, ¶ 43.

¶ 28. The Zarders' policy defines "uninsured motor vehicle" in part as "a land motor vehicle or trailer which is . . . [a] hit-and-run vehicle whose operator or owner is unknown and which strikes [an insured]." Although the term "hit-and-run" is not defined in the

that we need not determine whether Hull is entitled to UM coverage under Wis. Stat. § 632.32(4), since we have already decided that Hull is entitled to UM coverage under the terms of her two insurance policies."); *Fischer*, 268 Wis. 2d 519, ¶ 27.

policy, Acuity asserts that the meaning of "run" is not "lacking in clarity." It asserts that the term means to "flee without stopping."

¶ 29. Acuity advances two arguments in support of this conclusion. The first is tied to the particular facts of this case and focuses on the intent of the unidentified driver. The second is based on our prior decision in *Hayne*, 115 Wis. 2d 68. We address each argument in turn.

¶ 30. At oral argument, Acuity's counsel explained: "When you look at the facts of this case, we clearly do not have a 'flee' from a common sense standpoint because the facts show that the occupants of the vehicle checked on the wellbeing of Zachary Zarder. There was no attempt by them to shield their identity. There was no attempt by them to run from the scene of the accident." Under these facts, Acuity asserts, there is no coverage.

¶ 31. From this explanation, it appears that Acuity's definition hinges upon the intent of the unidentified driver and whether that driver attempted to evade responsibility by leaving the scene of the accident.[12] However, we note that a definition that focuses on the unidentified driver's intentions in leaving the scene of an accident is antithetical to the purpose of UM coverage. As applied here, the purpose is to compensate an injured person who is the victim of an unidentified

[12] Considered in isolation, this definition of "run" is reasonable. It is consistent with some dictionary definitions of the term "hit-and-run." The *Random House Unabridged Dictionary,* for example, defines "hit-and-run" as "guilty of fleeing the scene of an accident or injury one has caused, esp. a vehicular accident, thereby attempting to evade being identified and held responsible: a hit-and-run driver." *Random House Unabridged Dictionary* 907 (2d ed. 1993).

motorist's negligence, subject to the terms of the policy. *See Theis,* 232 Wis. 2d 749, ¶¶ 28–29.

¶ 32. The intention of the unidentified driver— while central in the context of a criminal hit-and-run charge under Wis. Stat. § 346.67—is not relevant here. In construing an insurance policy, our focus is not on what the unidentified driver intended. Rather, our focus is on what the parties to the contract intended. One of the circumstances that may arise under the policy is when the victim sustains injury or damages, but the tortfeasor is unknown.

¶ 33. Although the court of appeals looked to Wis. Stat. § 346.67 in defining the term hit-and-run, we do not find the scope and application of that statute to be helpful to the interpretation of this insurance policy. Insurance coverage for a hit-and-run accident involving an unidentified vehicle is not coextensive with the criminal culpability of the driver of that vehicle under Wis. Stat. § 346.67.

¶ 34. Whatever the unidentified driver's motivation for leaving the accident scene—good, bad, or indifferent—it has no effect on the insured's inability to recover from that unidentified driver's liability policy. The question here is whether the parties contracted for coverage for this accident under the terms of the insurance policy.

¶ 35. Acuity also relies on the fact that Zarder "inform[ed] [the driver] that he was fine" and "indica- te[ed] that they [could] leave the scene of the accident." When the unidentified driver has been "dismissed from the scene, when the person that has been struck says look I'm fine, you guys may take off," Acuity contends

341

that there has not been a hit-and-run. Acuity attempts to place an affirmative responsibility on the insured to collect identifying information from the driver if possible before permitting that driver to leave.

¶ 36.   This contention, however, is not borne out by the provisions in the Zarders' insurance policy. There is no contractual requirement that an insured attempt to obtain this type of information.[13] Rather, the policy merely sets forth two duties of the insured: (1) the insured must cooperate[14] with Acuity; and (2) "A person claiming Uninsured Motorists coverage must notify the police within 24 hours of the accident if a hit-and-run driver is involved."[15]

¶ 37.   Having concluded that the intent of the unidentified driver in leaving the scene of the accident is not relevant here, we turn next to Acuity's assertion that *Hayne* controls the outcome of this case. It contends that we need not apply the rules of construing an insurance policy here, given that *Hayne* has already examined the term "hit-and-run" in the context of the requirements of the omnibus statute, Wis. Stat. § 632.32(4).

¶ 38.   Acuity acknowledges that with respect to what constitutes a run, dictionary definitions of "hit-and-run" are "less than identical" and that they "do not mirror one another." Nevertheless, it points to the

---

[13] Presumably, an insurer could write in such a requirement and it would be upheld unless contrary to statute.

[14] This includes providing information about the accident, submitting to medical examinations, permitting Acuity to inspect the damaged property before it is repaired, and other similar obligations.

[15] This requirement likely exists to reduce the likelihood of fraudulent claims. In this case, the Zarders notified the New Berlin Police Department on the evening of the accident.

342

conclusion in *Hayne* that the statutory term "hit-and-run" is "unambiguous" and "clear on its face." 115 Wis. 2d at 76. "Because this Court has ruled the term 'hit-and-run' is unambiguous," Acuity contends that finding controls "irrespective of whether the discussion concerns the Acuity policy or, alternatively, the Omnibus statute."

¶ 39. In *Hayne,* the insured swerved to avoid an oncoming car, lost control of his vehicle, and was injured. 115 Wis. 2d at 69. There was no contact between Hayne's vehicle and the oncoming car, which was never identified. *Id.* Hayne filed suit against his insurer, asserting a claim under his UM policy. *Id.* at 69–70. This court interpreted Wis. Stat. § 632.32(4) and determined that it did not mandate UM coverage for an accident involving an unidentified motor vehicle when there was no physical contact between the insured and the unidentified vehicle. *Id.* at 69.

¶ 40. In reaching this determination, the court consulted several dictionaries, reasoning that "[t]hese definitions clearly indicate that the plain meaning of 'hit-and-run' consists of two elements: a 'hit' or striking, and a 'run', or fleeing from the scene of an accident." *Id.* at 73–74. The court concluded: "The clear statutory language of sec. 632.32(4)(a)2.b. reflects a legislative intent that the statute apply only to accidents in which there has been physical contact."[16] *Id.* at 74.

_____

[16] We later explained the public policy rationale behind the holding in *Hayne:* "One public policy concern is of primary relevance to our analysis, that of preventing fraud. The physical contact element unambiguously included in the term 'hit-and-run' in Wis. Stat. § 632.32(4)(a)2.b. prevents fraudulent claims from being brought by an insured driver who is involved in an accident of his or her own making." *Smith v. Gen. Cas. Ins. Co.,* 2000 WI 127, ¶ 25, 239 Wis. 2d 646, 619 N.W.2d 882.

¶ 41. We find Acuity's argument that *Hayne* controls the outcome here unpersuasive for the following three reasons. First, although *Hayne* determined that the term "run" in the statutory phrase "hit-and-run" means "fleeing from the scene of an accident," this definition leaves unanswered the question presented in this case. The court of appeals correctly recognized that the *Hayne* definition of hit-and-run "begged the question" because "while the court seemingly equated 'run' with 'flee,' it did not define or discuss the circumstances that determine when a 'flee' has occurred." *Zarder,* 316 Wis. 2d 573, ¶¶ 12, 14. Although Acuity asserts that "run" means "fleeing the scene without stopping," the phrase "without stopping" does not appear in *Hayne*'s definition of "hit-and-run."

¶ 42. Second, even though *Hayne* pronounced the physical contact requirement unambiguous, other aspects of the definition of "hit-and-run" may not be unambiguous. A word or phrase may be unambiguous in one situation, and yet be ambiguous in another. *Seider v. O'Connell,* 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659. "Permitting the facts of a case to gauge ambiguity simply acknowledges that reasonable minds can differ about a statute's application when the text is a constant but the circumstances to which the text may apply are kaleidoscopic." *Id.*

¶ 43. In *DeHart v. Wisconsin Mutual Insurance Co.,* we discussed the applicability of the *Hayne* decision to new factual situations. 2007 WI 91, ¶ 15, 302 Wis. 2d 564, 734 N.W.2d 394 (citing *Smith v. Gen. Cas. Ins. Co.,* 2000 WI 127, ¶ 13, 239 Wis. 2d 646, 619 N.W.2d 882 (discussing *Hayne*)). We cited the Legislative Council Note to Wis. Stat. § 632.32(4)(a)2.b., which provides: "A precise definition of hit-and-run is not necessary for in

the rare case where a question arises the court can draw the line." *Id.* (citing Legislative Council Note, ch. 102, Laws of 1979). "Although we have established that the term 'hit-and-run' unambiguously includes an element of physical contact, we recognize that [the statute] does not specifically define 'hit-and-run.' " *Id.* "Accordingly," we concluded, "the term 'hit-and-run' has been construed on a case-by-case basis," and "[p]rior decisions explaining and interpreting the physical contact requirement are instructive to our determination in this case." *Id.*

¶ 44.  Third, the court in *Hayne* was interpreting the language of a statute. Here, however, we interpret the language in an insurance policy.[17] This distinction is relevant because the court applies different rules when construing a statute than it does when construing an insurance contract.

■■■■■

¶ 45.  Most importantly, when there is ambiguity in an insurance policy, it is construed in favor of coverage. By contrast, when there is ambiguity in a statute, the court looks to the legislature's intent in enacting it. "[T]he reasonable expectation of the insured regarding the language of the policy is not relevant to [an] analysis of Wis. Stat. § 632.32(4)(a)2.b." *Smith,* 239 Wis. 2d 646, ¶ 27. We conclude that *Hayne* does not control the outcome of this case.

---

[17] Here, we note, the terms of the policy and the terms of the statute differ slightly. The statute mandates coverage when an "unidentified motor vehicle [is] involved in a hit-and-run accident." Wis. Stat. § 632.32(4)(a)2.b. The Zarders' policy provides coverage when an insured is injured by "[a] hit-and-run vehicle whose operator or owner is unknown and which strikes [the insured]."

¶ 46. Accordingly, we turn to the language of the Zarders' policy and apply the standard rules of construction. The policy provides UM coverage for bodily injury which an insured person is legally entitled to recover from the owner or operator of "[a] hit-and-run vehicle whose operator or owner is unknown and which strikes [an insured]." The policy term "hit-and-run" is undefined.

¶ 47. A reasonable insured could conclude that a hit-and-run vehicle is a vehicle which strikes an insured and then flees the scene of the accident without stopping. However, a reasonable insured might also conclude that a hit-and-run vehicle is one that strikes an insured and then leaves the scene of the accident without the driver providing identifying information.[18]

¶ 48. Given that the phrase "hit-and-run" in the Zarders' policy is susceptible to more than one reasonable construction, we conclude that it is ambiguous. We therefore construe the phrase hit-and-run in favor of coverage. Ambiguous terms in an insurance contract are construed in favor of coverage for the insured. *Plastics Eng'g Co. v. Liberty Mut. Ins. Co.*, 2009 WI 13, ¶ 31, 315 Wis. 2d 556, 759 N.W.2d 613; *Estate of Sustache v. Am. Fam. Mut. Ins. Co.*, 2008 WI 87, ¶ 21, 311 Wis. 2d 548, 751 N.W.2d 845; *Bagadia*, 310 Wis. 2d 197, ¶ 42; *Summers v. Touchpoint Health Plan, Inc.*, 2008 WI 45, ¶ 31, 309 Wis. 2d 78, 749 N.W.2d 182.

---

[18] This definition is consistent with the term's common and ordinary meaning, as found in some dictionary definitions. For instance, the *American Heritage Dictionary* defines "hit-and-run" as "[b]eing or involving the driver of a motor vehicle who leaves the scene of an accident, especially one in which a pedestrian or another vehicle has been struck." *American Heritage Dictionary of the English Language* 858 (3d ed. 1992).

¶ 49. Because we conclude that the policy provides for coverage for this type of accident, we need not examine the requirements of Wis. Stat. § 632.32(4). We conclude that the court of appeals did not err in affirming the circuit court's decision to deny Acuity's motion for declaratory judgment.

## IV

¶ 50. Likewise, having concluded that ambiguity in the policy results in coverage here, we need not address the issue of whether the court of appeals can dismiss as dictum a statement from an opinion by this court. Because it is a recurring issue and fundamental to the meaning and precedential value of our decisions, we nevertheless address it here to provide needed guidance to the courts and litigants of this state.

¶ 51. Acuity contends that by labeling a statement in *Hayne* dictum, the court of appeals effectively withdrew that language, exceeding its authority. It is the supreme court's primary function to develop the law, and "[t]he supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case." *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).

¶ 52. We recognize that previous decisions written by this court have provided inconsistent guidance on the definition and effect of dicta in Wisconsin cases.[19] Given this court's prior inconsistency in defin-

[19] There are two disparate lines of Wisconsin cases defining dicta. Under one line of cases, this court's discussion of a question "germane to . . . the controversy" is not dictum, even if that discussion is not "decisive of[] the controversy":

347

ing dicta, it is not surprising that the court of appeals would be unclear about whether the statement from *Hayne* was in fact dictum.

¶ 53. Nevertheless, resolution of the question of what constitutes dicta would not resolve the specific question presented in this appeal. The question here is not the definition of dicta. Rather, the question presented is regardless of how it is defined, can the court of appeals dismiss a statement from an opinion by this court by concluding that it is dictum.

¶ 54. In *Cook,* this court explained that the court of appeals may not overrule, modify, or withdraw language from a prior supreme court or court of appeals opinion—even if the court of appeals believes that the prior precedent is erroneous. 208 Wis. 2d at 189–90. Rather, we concluded that this court has the exclusive power to overrule, modify, or withdraw language from prior Wisconsin cases. *Id.* at 189. The *Cook* court explained that this result upheld principles of predictability, certainty, and finality relied upon by litigants, attorneys, and courts alike. *Id.* at 189.

> It is deemed the doctrine of the cases is that when an appellate court of last resort intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a dictum but is a judicial act of the court which it will thereafter recognize as a binding decision.

*State v. Picotte,* 2003 WI 42, ¶ 61, 261 Wis. 2d 249, 661 N.W.2d 381.

However, a competing line of cases, exemplified by *State v. Sartin,* 200 Wis. 2d 47, 546 N.W.2d 449 (1996), defines dictum as "a statement or language expressed in a court's opinion which extends beyond the facts in the case and is broader than necessary and not essential to the determination of the issues before it." *Id.* at 60 n.7.

¶ 55. As observed in *Cook,* however, the court of appeals is not powerless if it concludes that a prior decision of the supreme court is erroneous. *Id.* at 190. Rather, the court of appeals has two options:

> It may signal its disfavor to litigants, lawyers and this court by certifying the appeal to this court, explaining that it believes a prior case was wrongly decided. Alternatively, the court of appeals may decide the appeal, adhering to a prior case but stating its belief that the prior case was wrongly decided.

*Id.*

¶ 56. Since *Cook,* the court of appeals has declined to withdraw language from prior cases decided by this court.[20] For instance, in *State v. Grunke,* the court of appeals "recognize[d] that the supreme court's statements as to the purpose of [a statute] are not 'ascertainable from the text' of the statute itself." 2007 WI App 198, ¶ 8 n.3, 305 Wis. 2d 312, 738 N.W.2d 137, *reversed by* 2008 WI 82, 311 Wis. 2d 439, 752 N.W.2d 769. Nevertheless, the court said it was "not free to disregard language of the supreme court." *Id.* Additionally, in *Monroe Co. DHS v. Luis R.,* the court of appeals stated that the supreme court had construed the statutory term "custody" in a way that was difficult to apply. 2009 WI App 109, ¶ 23, 320 Wis. 2d 652, 770 N.W.2d 795. However, the court explained that it could not "modify the supreme court's analysis on this point by

[20] *But see Wieting Funeral Home of Chilton v. Meridian Mut. Ins. Co.,* 2004 WI App 218, ¶ 14, 277 Wis. 2d 274, 690 N.W.2d 442 (concluding that it was not bound by the holding of a prior supreme court case when that case did not address the entirely new and potentially dispositive issue of the effect of a statute on the outcome of the case).

altering the meaning of 'custody,' " and that such an argument "must be addressed to the supreme court."[21]

¶ 57. By concluding that a statement in a supreme court opinion is dictum, the court of appeals necessarily withdraws or modifies language from that opinion, contrary to our directive in *Cook*. For example, by concluding that the definition of "run" was dictum—rather than inapplicable as precedent for interpreting an insurance policy—the court of appeals implied that the *Hayne* definition would never be binding authority, even for a court interpreting the omnibus statute.

¶ 58. If the court of appeals could dismiss a statement in a prior case from this court as dictum, the limitation in *Cook* against overruling, modifying, or withdrawing language would be seriously undermined. We therefore conclude that to uphold the principles of predictability, certainty, and finality, the court of appeals may not dismiss a statement from an opinion by this court by concluding that it is dictum.

V

¶ 59. In sum, we conclude that Acuity's focus on the unidentified driver's intention when leaving the

---

[21] *But see State v. Jahnke,* 2009 WI App 4, ¶ 24, 316 Wis. 2d 324, 762 N.W.2d 696 (2008) (Dykman, J., dissenting) ("I do not join in the majority's opinion because it is an attempt to avoid the requirement of *Cook v. Cook*[.] The majority acknowledges that . . . it cannot use the words 'overrule, modify or withdraw.' Instead, the majority uses the word 'incomplete' to avoid the meaning we previously gave to the statute."); *Steiner v. Steiner,* 2004 WI App 169, ¶ 20, 276 Wis. 2d 290, 687 N.W.2d 740 (Dykman, J., dissenting) ("Faced with [the] inability to modify its published opinions, panels sometimes distinguished a problematic case on exceedingly fine points, or on assumed facts.").

accident scene is not relevant to our determination of whether there is coverage under the terms of the insurance policy. Further, we conclude that *Hayne* does not control the outcome of this case. We, therefore, apply the standard rules of construction to the Zarders' UM policy.

¶ 60.  Given that the phrase "hit-and-run" in the Zarders' UM policy is susceptible to more than one reasonable construction, we determine that it is ambiguous. We therefore construe the phrase "hit-and-run" in favor of coverage. Having concluded that there is coverage for this type of accident under the policy, we need not examine the requirements of Wis. Stat. § 632.32(4). Accordingly, we affirm the court of appeals, but we modify the rationale and remand to the circuit court for further proceedings.

*By the Court.*—The decision of the court of appeals is modified and affirmed and, as modified, the cause is remanded to the circuit court.