[No. 23784-9-II.   Division Two.   July 16, 1999.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Respondent*, v. ANNE E. SEAMAN, *Appellant*.

*Ben Shafton* of *Morse & Bratt*, for appellant.

*Jackson H. Welch* of *Landerholm, Memovich, Lansverk & Whitesides P.S.*, for respondent.

HOUGHTON, J. — After claiming she was involved in a hit-and-run accident, Anne Seaman sought underinsured motorist (UIM) coverage from her insurer, State Farm. State Farm denied the claim and filed an action seeking declaratory relief. Seaman counterclaimed for benefits under her insurance policy. Both parties moved for summary judgment. The trial court concluded that there was no coverage and entered a summary judgment dismissing her claim. Seaman appeals. We affirm.

## FACTS

In the midafternoon hours of February 17, 1997, Seaman's vehicle was rear-ended by another vehicle when she was making a legal left-hand turn. Both Seaman and the driver of the other vehicle pulled over and inspected the vehicles, which apparently were not damaged. Each driver asked if the other was okay. Both drivers responded in the positive. Whereupon the driver of the vehicle that hit Seaman's stated, "I guess it's okay then." He went to his vehicle and drove away. So did Seaman.

In a deposition, Seaman stated that when her vehicle was hit she felt a popping sensation in her neck and back. She also stated that for up to 10 minutes following the accident she felt "stunned" and described her mental state as "[s]hook up," "[t]ense," and "[f]rightened." Seaman neither asked for nor obtained any information from the driver of the other vehicle before he left the scene. She did not write down the license plate number nor the make and model of the other vehicle. She stated that she failed to do so because she was "stunned" and "shook up."

One day after the accident, Seaman developed neck and back pain. But she failed to report the incident to the police as required by her insurance policy.[1] Approximately one-and-one-half years later, a State Farm adjuster suggested that Seaman try to find the driver of the unidentified vehicle by waiting at the same location in the event he may reappear. This method of investigation was unsuccessful.

Seaman then submitted a claim for UIM benefits to her insurer, State Farm, on the basis that she was involved in an accident with a "hit-and-run" driver. State Farm disagreed, denied her claim, and sought a declaratory judgment.[2] Seaman counterclaimed for benefits under her insurance policy. Both parties moved for summary judgment. The trial court determined that Seaman's claims were not covered under her policy and granted summary judgment in favor of State Farm. Seaman appeals.

## ANALYSIS

The parties dispute the meaning of "hit-and-run" within the policy language under the facts of this case. Seaman offers several definitions, urging us to adopt one based upon either RCW 46.52.020, the criminal hit-and-run statute, or standard dictionary definitions. According to Seaman, the terms "hit-and-run" within the meaning of the insurance policy should be liberally interpreted to effectuate the legislative intent behind the UIM statutes, namely, to protect motorists from underinsured drivers.

On review of summary judgment, an appellate court engages in the same inquiry as the trial court. *Hill v. J.C. Penney, Inc.*, 70 Wn. App. 225, 238, 852 P.2d 1111, *review*

---

[1]Under the insured's duties, State Farm requires that "[t]he person making claim . . . shall . . . under the underinsured motor vehicle coverages: (1) report a 'hit-and-run' accident or a 'phantom vehicle' accident to the police within 72 hours and to us within 30 days."

[2]The parties'.dispute over the amount of personal injury protection benefits to which Seaman claims she is entitled is not part of this appeal. The parties have submitted that issue to arbitration.

*denied*, 122 Wn.2d 1023 (1993). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993). The court considers all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. *Id.* at 249. The motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Id.*

Seaman's insurance policy with State Farm includes a UIM provision that State Farm:

> will pay damage for *bodily injury* sustained by an *insured* that an *insured* is legally entitled to collect from the owner or driver of an *underinsured motor vehicle*. The *bodily injury* must be caused by accident arising out of the operation, maintenance or use of an *underinsured motor vehicle*.

The policy's definition of an "underinsured motor vehicle" includes "a 'hit-and-run' land motor vehicle whose owner or driver remains unknown and which strikes: (a) the *insured*; or (b) the vehicle the *insured* is occupying and causes *bodily injury* to the *insured*."

Undefined terms in an insurance policy are to be accorded their plain, ordinary, and popular meaning, and not a technical, legal meaning. *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 424, 932 P.2d 1244 (1997). If the language is clear and unambiguous, the court may not modify the written terms nor create an ambiguity where none exists. *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 435, 545 P.2d 1193 (1976). But if there are ambiguities in the insurance policy, they are strictly construed against the insurer. *Peasley*, 131 Wn.2d at 424; *see also Greer v. Northwestern Nat'l Ins. Co.*, 109 Wn.2d 191, 201, 743 P.2d 1244 (1987) (where insurance policy may be reasonably interpreted in multiple ways, court should apply meaning most favorable to insured). When analyzing the policy and reviewing for an ambiguity, policy language is construed as

if read by an average insurance purchaser. *Peasley*, 131 Wn.2d at 424.

Seaman cites the criminal hit-and-run statute, RCW 46.52.020, as support for her contention that she was involved in a hit-and-run accident. RCW 46.52.020 imposes a duty on a driver of a vehicle involved in an accident with another vehicle that is attended by another person to provide identification and insurance information to such other person only where property damage or personal injury has occurred. RCW 46.52.020(1)-(3). As the court explained in *State v. Vela*, 100 Wn.2d 636, 641, 673 P.2d 185 (1983), RCW 46.52.020 "requires the motorist to stop and investigate" because this requirement "serves the underlying rationale of facilitating investigation of accidents and providing immediate assistance to those injured." But the statute does not require more than stopping and investigating if the inquiry reveals that there is neither property damage nor physical injury.

Here, the unidentified driver complied with his duties under RCW 46.52.020. Upon striking Seaman's vehicle, he exited his own vehicle, investigated the cars for property damage, and asked Seaman about her physical well-being. Finding no apparent property damage and based upon Seaman's representation that she was not injured, the unidentified driver returned to his car and departed. He undertook a reasonable investigation of the accident scene by confirming that there were no signs of visible damage and in receiving Seaman's assurance that she was not injured. Thus, he was not a "hit-and-run" driver within the meaning of the criminal hit-and-run statute.

Nor are we persuaded by Seaman's argument, based upon a dictionary definition, that a hit-and-run collision is one where the operator of the vehicle leaves the scene without identifying himself or herself. *See* BLACK's LAW DICTIONARY 372 (5th ed. 1983). Our Supreme Court in *Hartford Accident & Indem. Co. v. Novak*, 83 Wn.2d 576, 585, 520 P.2d 1368 (1974), defined a "hit-and-run" as "a car involved in an accident causing damages where the driver flees from

the scene." Thus, as defined by the Supreme Court, a hit-and-run denotes only a situation where a driver flees the scene of an accident. Accordingly, the definition of hit-and-run does not include a situation where a driver stops, inquires, and is reassured that there is neither personal injury nor property damage.

Here, the unidentified driver did not flee; rather he promptly exited his car and approached Seaman to inquire about her condition and the condition of her automobile. *Accord Lhotka v. Illinois Farmers Ins. Co.*, 572 N.W.2d 772 (Minn. Ct. App. 1998) (where unidentified driver struck pedestrian who represented to driver that she was "okay" and requested no information from driver, court held that no "hit-and-run" occurred, basing its decision upon state criminal statute defining "hit-and-run").

Seaman also relies upon *Courmier-Trahan v. Service Cab Co.*, 546 So. 2d 513 (La. Ct. App.), *review denied*, 551 So. 2d 1325 (La. 1989), to support her argument. But the statute at issue in *Courmier-Trahan* differs significantly from RCW 46.52.020 in that the Louisiana statute defines "hit-and-run" as "the intentional failure of the driver of a vehicle involved in or causing *any accident*, to stop such vehicle at the scene of the accident, to give his identity, and to render reasonable aid. . . ." 9A LA. REV. STAT. ANN. § 14:100(A) (West Supp. 1999) (emphasis added). The Louisiana statute places a greater burden upon a driver involved in an accident because information must be exchanged in "any accident." Whereas, under RCW 46.52.020, if there is no apparent bodily injury or property damage, a driver has no duty to proffer identification and insurance information.

■ Finally, under the facts of this case, we hold that the term "hit-and-run" is not ambiguous. The term does not encompass a situation where a driver promptly exits his vehicle, undertakes an investigation, is assured there is neither injury nor damage, and departs. Thus, the trial court

properly concluded that Seaman's UIM claims are not covered under her State Farm insurance policy.

## ATTORNEY FEES

Because we affirm the trial court's decision regarding denial of coverage, we deny Seaman's request for attorney fees at trial and on appeal.

Affirmed.

ARMSTRONG, A.C.J., and SEINFELD, J., concur.