*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GRIFFIN WASIK,

        Plaintiff-Appellant,

v

AUTO CLUB INSURANCE ASSOCIATION, and
PROGRESSIVE MARATHON INSURANCE
COMPANY,

        Defendants-Appellees.

FOR PUBLICATION
June 2, 2022
9:00 a.m.

No. 355848
Oakland Circuit Court
LC No. 2020-179089-NF

Before: RICK, P.J., and MURRAY and SHAPIRO, JJ.

MURRAY, J.

Plaintiff appeals as of right the final order granting motions for summary disposition brought by defendants, Auto Club Insurance Association and Progressive Marathon Insurance Company, and dismissing the case with prejudice.

In resolving this appeal, we must decide a matter of first impression: does the phrase "hit and run vehicle" under an auto insurance policy include a vehicle that is pulled over after hitting another vehicle, the drivers of both vehicles exit the cars and inspect the vehicles for damage, and mutually conclude that because no damage exists, there is no need to contact the police or exchange insurance information? For the reasons expressed below, we conclude that it does not, and therefore affirm the trial court's order.

## I. BACKGROUND

The parties agree that the material facts regarding the accident and the immediate aftermath are undisputed. Anna Mayer, plaintiff's girlfriend, was driving her car with plaintiff as the sole passenger. Mayer was stopped at a red light, and when she attempted to turn right, she felt her vehicle slide on a patch of ice. As she continued turning, the car behind her, a Ford Explorer, slid on the same patch of ice and hit the back, passenger side of Mayer's vehicle. Mayer and the driver of the Explorer turned on their hazard lights, and the Explorer followed Mayer to the nearest parking lot, where Mayer and the driver exited their vehicles to check for damage and ensure there were no injuries. On finding no damage to her vehicle, Mayer assured the driver of the Explorer

that there was no damage, and they mutually agreed that there was no need to contact the police. Mayer and the driver of the Explorer left the scene without exchanging information.

Plaintiff began complaining of injuries almost as soon as he and Mayer arrived at plaintiff's house, so Mayer drove plaintiff to an emergency room that night, where he was diagnosed with a concussion. Plaintiff thereafter sought personal injury protection (PIP) benefits from Progressive, and uninsured motorist (UM) benefits from Progressive (the insurer of plaintiff's mother's vehicle) and Auto Club (the insurer of Mayer's vehicle), under the no-fault act, MCL 500.3101 *et seq.*, for medical expenses, replacement services, and attendant care related to injuries plaintiff sustained in the motor vehicle accident.

Progressive and Auto Club eventually moved for summary disposition under MCR 2.116(C)(10) with respect to plaintiff's UM claims, arguing plaintiff was not entitled to benefits because under the common meaning of the phrase "hit and run vehicle," the Explorer was not a "hit-and-run vehicle" under the insurance policies. Plaintiff argued that it was unnecessary to apply the common meaning of the phrase "hit-and-run vehicle" because it was already defined by MCL 257.617, MCL 257.617a, and MCL 257.619. As noted, the trial court held that the Explorer was not a "hit-and-run vehicle" under either policy, employing the plain and ordinary meaning of the phrase. Plaintiff moved for reconsideration, which the trial court denied. This appeal followed.

## II. STANDARDS OF REVIEW

### A. APPELLATE STANDARDS OF REVIEW

In this appeal, we must decide whether the trial court properly granted defendants' motions for summary disposition, which in turn requires us to determine whether the trial court correctly applied the plain language of the insurance contracts. We engage in a de novo review of both issues. See *Dell v Citizens Ins Co of America*, 312 Mich App 734, 739; 880 NW2d 280 (2015) ("This Court . . . reviews de novo a trial court's decision on a motion for summary disposition.") and *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008) (The de novo standard of review applies to "[q]uestions involving the proper interpretation of a contract or the legal effect of a contractual clause . . . ."). This, of course, means we give respectful consideration, but no deference to, the trial court decision. *Gillette Commercial Operations North America & Subsidiaries v Dep't of Treasury*, 312 Mich App 394, 405 n 3; 878 NW2d 891 (2015) ("Though we can give no deference to the trial court's legal rulings, unlike the deference we give to discretionary calls on evidence or findings of fact, we nevertheless give the trial court's legal rulings careful consideration.").

### B. LEGAL PRINCIPLES GOVERNING OUR REVIEW

The two motions for summary disposition were brought pursuant to MCR 2.116(C)(10), which requires a court to consider "the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "Summary disposition is appropriate . . . if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id.*

The standards for reading and applying insurance contracts are familiar and require a court to construe an insurance contract "in the same manner as other contracts, assigning the words in the contract their 'ordinary and plain meaning if such would be apparent to a reader of the instrument.' " *Auto-Owners Ins Co v Olympia Entertainment, Inc*, 310 Mich App 132, 145; 871 NW2d 530 (2015), quoting *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 366-367; 817 NW2d 504 (2012). "[I]f the language of the contract is unambiguous, [this Court] construe[s] and enforce[s] the contract as written." *Holland v Trinity Health Care Corp*, 287 Mich App 524, 527; 791 NW2d 724 (2010) (citations and quotation marks omitted). "Courts may not impose an ambiguity on clear contract language." *Coates v Bastian Bros Inc*, 276 Mich App 498, 503; 741 NW2d 539 (2007) (citation omitted). And a provision is not ambiguous if "it is not susceptible to more than one interpretation and does not conflict with any other provision." *Id*. at 510.

"An ambiguous provision in an insurance contract is construed against the insurer and in favor of coverage," *Auto Owners Ins Co v Seils*, 310 Mich App 132, 146; 871 NW2d 530 (2015), though "this rule is only to be applied if all conventional means of contract interpretation, including the consideration of relevant extrinsic evidence, have left the [factfinder] unable to determine what the parties intended their contract to mean." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 471; 663 NW2d 447 (2003). An insurance contract is not ambiguous "merely because a term is not defined in the contract," *McGrath v Allstate Ins Co*, 290 Mich App 434, 439; 802 NW2d 619 (2010), nor simply because the parties disagree on its meaning. *Gortney v Norfolk & Western R Co*, 216 Mich App 535, 540; 549 NW2d 612 (1996) ("The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity.").

## III.  DISCUSSION

"Because providing UM coverage is optional and not statutorily mandated under the no-fault act, the policy language alone controls the circumstances entitling a claimant to an award of benefits." *DeFrain*, 491 Mich at 367. We, therefore, look to the terms agreed to by the parties in their insurance contracts.

Progressive's UM insurance policy, which was owned by plaintiff's mother and which covered him, states:

> [W]e will pay for damages that an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:
>
> > 1. sustained by an injured person;
> >
> > 2. caused by an accident; and
> >
> > 3. arising out of the ownership, maintenance or use of an uninsured motor vehicle.

The Progressive policy defines the term "uninsured motor vehicle" as:

> [A] land motor vehicle or trailer of any type:
>
> > d. that is a hit-and-run vehicle whose owner or operator cannot be identified and which strikes:

(i) you, a relative, or a rated resident;

(ii) a vehicle that you, a relative, or a rated resident are occupying[.]

The "hit and run vehicle" provisions of the Auto Club policy that covered Mayer's vehicle were quite similar to the Progressive policy, and provide:

1. Subject to the Definitions, Exclusions, Conditions and Limits of Liability of this policy, we will pay damages for bodily injury to an insured person which:

a. is caused by accident; and

b. arises out of the ownership, operation, maintenance or use of an uninsured motor vehicle; and

c. that insured person suffers death, serious impairment of body function or permanent serious disfigurement; and

d. that insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle.

The Auto Club policy defines the term "uninsured motor vehicle" as a motor vehicle that is:

b. a hit-and-run motor vehicle of which the operator and owner are unknown and which makes direct physical contact with:

(1) you or a resident relative, or

(2) a motor vehicle which an insured person is occupying[.]

For plaintiff to obtain UM benefits under either policy, he must establish that (1) a "hit and run vehicle" (2) whose operator is unknown (3) made direct physical contact with the motor vehicle plaintiff was occupying. Neither policy defines the phrase "hit-and-run vehicle," and all parties agree that whether plaintiff is entitled to receive no-fault UM benefits from either insurer depends on whether the Explorer was a "hit-and-run vehicle."

Because the phrase "hit-and-run" is undefined, we must determine its plain and ordinary meaning. *McGrath*, 290 Mich App at 439. Merriam-Webster's Collegiate Dictionary defines "hit-and-run" as "being or involving a motor-vehicle driver who does not stop after being involved in an accident." *Merriam-Webster's Collegiate Dictionary* (11th ed). But we must apply all the words of the policy, *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 566; 489 NW2d 431 (1992), not just select ones, and tethered to the vehicle being a "hit and run vehicle," is that the operator must be unknown. So, for example, if a vehicle strikes another vehicle and does not stop, but the operator of that vehicle is known, there would be no coverage. Thus, it is not just a fleeing vehicle that triggers coverage, as the operator of the striking vehicle must also be unknown.

-4-

While no party identified a Michigan case that determined the meaning of "hit-and-run vehicle" under an auto insurance policy,[1] defendants presented decisions from other states addressing the meaning of nearly identical insurance policy language and under very similar facts. Cited are *Kasid v Country Mut Ins Co*, 776 NW2d 181, 187 (Minn App, 2009), where the court held that "when an individual is not denied an opportunity to obtain information following an accident, but fails to obtain such information, that accident is not a hit-and-run accident for purposes of UM benefits[,]" and *State Farm Mut Auto Ins Co v Seaman*, 96 Wash App 629; 980 P2d 288 (1999), where the court determined that the plaintiff failed to establish involvement in a hit-and-run accident because the at-fault driver did not flee the scene after the accident.

In line with those decisions is *Sylvester v United Services Auto Assoc Casualty Ins Co*, 42 Conn App 219; 678 A2d 1005 (1996), aff'd 240 Conn 544; 692 A2d 1254 (1997). There, the vehicle that struck plaintiff stopped, and the operator exited the vehicle to see if plaintiff was hurt. After a few minutes, plaintiff told the driver he was fine and could leave. Plaintiff did not ask for any identifying information. The trial court dismissed the case, concluding that the policy—which like here, required that the plaintiff be hit by a "hit and run vehicle" whose operator was unknown—did not apply because plaintiff had the opportunity to obtain the driver's identification but chose not to obtain it. *Sylvester*, 42 Conn App at 221-222. The Court of Appeals affirmed, but with different reasoning. The appellate court instead held that the vehicle that hit plaintiff was not a "hit and run vehicle" as that phrase is commonly understood because the driver did stop and checked on plaintiff:

> We look to dictionary definitions to ascertain the ordinary meaning of a "hit and run vehicle." See *Wrinn v State*, 234 Conn 401, 406; 661 A2d 1034 (1995). The term has meaning in common parlance. "Hit-and-run," as it refers to the driver of a vehicle, has been defined as "guilty of leaving the scene of an accident without stopping to render assistance or to comply with legal requirements." Webster's Third New International Dictionary. It has also been defined as "[d]esignating or involving the driver of a motor vehicle who drives on after striking a pedestrian or another vehicle." American Heritage Dictionary (New College Ed 1981). Because the driver of the vehicle that struck the plaintiff stopped to render assistance and because the plaintiff affirmatively acted to dismiss the driver from the scene of the accident, we conclude that the plaintiff was not struck by a hit and run vehicle. Accordingly, under the facts here, the policy's provisions for uninsured motorist coverage are inapplicable and we, therefore, do not reach the issue of whether the

---

[1] There is one decision that references this issue, albeit it is dicta in an unpublished opinion. In *Grimmett v Farmers Ins Exchange*, unpublished opinion per curiam of the Court of Appeals, decided October 6, 2015 (Docket No. 321492), the Court concluded that a "hit and run" accident "does not just encompass an accident where the other motorist immediately flees the scene—it also includes accidents where the other driver does not immediately flee the scene, but nonetheless fails to provide his contact and identification information to the policy holder or the authorities after the accident occurs." *Grimmett*, at n 1. However, the issue before the Court was solely whether the plaintiff satisfied the notice provisions of the contract, and thus the conclusion set forth in fn 1 is dicta.

plaintiff had a duty to ascertain the identity and insurance status of the operator of the automobile that struck him. [*Id.* at 224.]

Though defendants point us to the favorable principles articulated in *Kasid* and *Seaman*, they failed to mention that another line of decisions from other states more broadly apply the phrase or deem the phrase ambiguous and thus construe it in favor of coverage. See, e.g., *Zarder v Humana Ins Co*, 324 Wis 2d 325; 782 NW2d 682 (2010); *Wilson v Progressive Northern Ins Co*, 151 NH 782; 868 A2d 268 (2005), and *Commerce Ins Co v Mendonca*, 57 Mass App 522; 784 NE2d 43 (2003). In both *Zarder* and *Wilson* the courts concluded that the contractual phrase "hit and run" was ambiguous because it could reasonably be read to mean a vehicle that strikes and flees, or a vehicle that strikes and stops after the accident, but leaves before providing any information. See *Zarder*, 324 Wis 2d at 346, and *Wilson*, 151 NH at 789. Because the phrase was susceptible to more than one reasonable interpretation, it was construed in favor of insurance coverage. On the other hand, in *Mendonca* the Massachusetts Court of Appeals rejected a literal interpretation of "hit and run" in part because that state's supreme court had previously rejected a literal interpretation of "hit," and because a coverage gap would exist between someone hit by a vehicle that fled, and someone who was hit by a vehicle that stopped but left before information could be collected. *Mendonca*, 57 Mass App at 524-526.

Although these decisions are informative, our decision is anchored in the words of these contracts. In applying the common understanding of this phrase, we do not read "hit and run vehicle" to exclusively mean, as defendants argue, a vehicle that hits another vehicle and does not stop at the scene of the accident, and thus is unidentified. Instead, we hold that under these contracts, "hit and run vehicle" means a vehicle that hits another vehicle and the driver leaves the scene of the accident—either without stopping or at any time before an exchange of information can take place. This reading comports with the plain meaning of the phrase "hit and run" and enforces the common understanding of that phrase. Importantly, it also takes into consideration the remaining sentence of each policy, i.e., that the driver either be "unknown" or "cannot be identified," as each policy requires in some form that the driver be unidentified. The requirement that the driver be unidentified for the policy to apply means to us that the "run" has to occur *before* the *opportunity* to exchange information can take place. And that type of "run" occurs if a vehicle flees without stopping, or if the vehicle stops but leaves before there is an *opportunity* to exchange information.[2]

Working with this definition and considering the undisputed facts, we readily conclude that plaintiff was not hit by a hit and run vehicle, as it is undisputed that the driver of the Explorer did not flee from the scene of the accident but instead followed Mayer to the nearest parking lot, where he and Mayer checked for injuries and damage to their vehicles.[3] Additionally, the driver only left

---

[2] The requirement that the driver stop and provide an opportunity to exchange information does not require proof of a driver's intent. *Russell v Sentinel Ins Co*, 906 NW2d 543, 547 (Minn App, 2018) ("We conclude that the ordinary meaning of hit-and-run and its interpretation in our caselaw do not require a showing that an unidentified driver fled, or left, with the intent to escape liability.")

[3] Plaintiff argues that an occupant of a vehicle may be sufficiently injured such that they do not have the opportunity to obtain identifying information from the striking driver at the scene. While that scenario is plausible, the trial court noted that plaintiff testified that after the accident, he exited

-6-

the accident scene *after* Mayer told him there was no damage to her vehicle, and they both agreed there was no need to contact the police or exchange information. In other words, it is undisputed that the driver of the vehicle that hit Mayer's vehicle did not "run" from anything, as he remained at the scene so that there was an opportunity to exchange information. Both drivers simply agreed it was not necessary to do so. Given those undisputed facts, the Explorer does not fall under the plain and ordinary meaning of the phrase "hit-and-run vehicle." Thus, the trial court did not err in granting summary disposition in favor of Progressive and Auto Club, as UM benefits were not available under either contract.

Plaintiff's challenge to this conclusion comprises two arguments, neither of which carries the day. First, plaintiff argues that the meaning of "hit-and-run vehicle" should be determined by analyzing the obligations within MCL 257.617, MCL 257.617a, MCL 257.618, and MCL 257.619.[4] However, "[u]ninsured motorist benefit clauses are construed without reference to the no-fault act because such insurance is not required under the act." *Twichel v MIC General Ins Corp*, 469 Mich 524, 533; 676 NW2d 616 (2004). See also *Dawson v Farm Bureau Mut Ins Co of Mich*, 293 Mich App 563, 568; 810 NW2d 106 (2011) ("Like uninsured-motorist benefits, underinsured-motorist coverage is not required by Michigan law, and the terms of coverage are controlled by the language of the contract itself, not by statute."). The referenced statutes neither define "hit-and-run vehicle," nor do they contain that phrase. And even though the statutes do not

---

the car but did not request identifying information or write down the license plate of the Explorer. Although plaintiff testified that he "didn't feel well" at the scene, that alone is not sufficient to create a genuine issue of material fact whether he was deprived of an opportunity to obtain the unknown driver's information.

[4] Although the meaning of the policy is governed only by its own terms, this definition is in harmony with the requirements of MCL 257.617, MCL 257.617a, and MCL 257.618, which contain identical first paragraphs and provide requirements for drivers to follow when involved in an accident:

(1) The driver of a vehicle who knows or who has reason to believe that he or she has been involved in an accident upon public or private property that is open to travel by the public shall immediately stop his or her vehicle at the scene of the accident and shall remain there until the requirements of section 619 are fulfilled or immediately report the accident to the nearest or most convenient police agency or officer to fulfill the requirements of section 619(a) and (b) if there is a reasonable and honest belief that remaining at the scene will result in further harm. The stop shall be made without obstructing traffic more than is necessary. [MCL 257.617(1); MCL 257.617a(1).]

MCL 257.619 states that "the driver of a vehicle who knows . . . he or she has been involved in an accident with . . . another vehicle . . . shall . . . (a) [g]ive his or her name and address, and the registration number of the vehicle he or she is operating, including the name and address of the owner, to a police officer, the individual struck, or the driver or occupants of the vehicle with which he or she has collided, [and] (b) [e]xhibit his or her operator's or chauffeur's license to a police officer, individual struck, or the driver or occupants of the vehicle with which he or she has collided."

play a role in defining terms in a UM policy, as we pointed out in footnote 4, the meaning of the phrase is in harmony with the obligations placed on motorists under those statutes.

Second, plaintiff provides a different definition of "hit and run" through application of Law.com's legal dictionary, which defines "hit-and-run" as "the crime of a driver of a vehicle who is involved in a collision with another vehicle, property or human being, who knowingly fails to stop to give his/her name, license number and other information as required by statute to the injured party, a witness or law enforcement officers." However, "hit and run" is a nonlegal phrase, and the meaning of an undefined nonlegal term is not provided by a legal dictionary. *Sands Appliance Servs v Wilson*, 463 Mich 231, 240-241; 615 NW2d 241 (2000). And, in any event, the Explorer would not fall within plaintiff's preferred definition because there is no dispute that the Explorer did not "knowingly fail to stop" and did discuss exchanging information with Mayer.[5]

Affirmed. Having prevailed in full, defendants may tax costs. MCR 7.219(A).

/s/ Christopher M. Murray
/s/ Michelle M. Rick
/s/ Douglas B. Shapiro

---

[5] Plaintiff, relying upon *Group Ins Co of Mich v Czopek (After Remand)*, 440 Mich 590, 598; 489 NW2d 444 (1992), argues the trial court erred because it did not consider plaintiff's perspective when it determined the meaning of the term "hit-and-run vehicle." *Czopek* is not helpful, as the policy language in *Czopek* specifically directed the consideration of circumstances that are "unforeseen and unexpected by the person injured." *Id.* at 597. No similar language is contained in either of these policies.